No. 17-7002

# In the United States Court of Appeals
# For the Tenth Circuit

———————

KENA UTTER, ET AL.,

*Plaintiffs–Appellants,*

*v.*

AMIE COLCLAZIER, ET AL.,

*Defendants–Appellees.*

———————

On Appeal from the United States District Court
for the Eastern District of Oklahoma
The Honorable Ronald A. White
D.C. No. 6:16-cv-00182-RAW

———————

**APPELLANTS' OPENING BRIEF**

———————

Heath Merchen
323 East Madison
Oklahoma City, Oklahoma 73105
Telephone: (405) 523-4345
Facsimile: (405) 523-4392
hmerchen@okea.org

*Attorney for Kena Utter, Aubree Holsapple, and Dara Campbell*

**Oral Argument Is Requested**

PDF Format Attachment Included

April 26, 2017

# Table of Contents

Table of Contents ........................................................................... i

Table of Attachments..................................................................... iii

Table of Authorities ..................................................................... iv

Statement of Jurisdiction .................................................................1

Statement of the Issues ...............................................................3

Statement of the Case ...................................................................4

I.      Factual Background.............................................................4

      A.      Majority of board members call superintendent after privately discussing Teachers outside of any open meeting. .4

      B.      Board member Cadenhead directly contacts Dara Campbell about her speech regarding the school bond issue............... 10

      C.      Kena Utter exercises approved intermittent morning leave to care for her autistic son and board members nonrenew her because of the intermittent leave......................................... 12

      D.      Board member and attorney Jack Cadenhead has undisclosed conflict of interest and acts on behalf of his private legal client, a coworker of Kena and Aubree who wants them removed.............................................. 14

II.     Procedural History........................................................ 15

Summary of the Argument..................................................... 21

Argument................................................................................. 24

I.      The district court erred in concluding that the Teachers' claims for breach of the negotiated agreement during their employment were dependent on the applicability of the Teacher Due Process Act... 24

II.     The district court erred in ruling no reasonable jury could find a
        property interest was created either by the District's custom and
        practice of rehiring teachers recommended by their superintendent
        and principal or by the express negotiated agreement provision
        guaranteeing all teachers due process ............................................ 33

III.    The district court erred in concluding that Dara's right to speak on
        issues of school finance was not clearly established and erred in
        disregarding Dara's evidence directly contradicting the board
        asserted nondiscriminatory reasons for nonrenewal. .................... 41

IV.     The district court erred in concluding that Kena had not
        established a *prima facie* case for FMLA retaliation where
        evidence clearly showed board members removed Kena from the
        rehire list because she used intermittent leave in the mornings.  48

Conclusion and Request for Relief ............................................................ 58

Statement of Counsel as to Oral Argument ............................................ 60

Certificate of Compliance with Rule 32(a) .............................................. 61

Certificate of Digital Submission and Privacy Redactions ..................... 62

Certificate of Service .............................................................................. 63

## Table of Attachments

*Kena Utter, et al., v. Amy Colclazier, et al.,*
No. 6:16-CV-00182-RAW, Order
(E.D. Okla. Oct. 27, 2016) (ECF No. 23) .......................................................A

*Kena Utter, et al., v. Amy Colclazier, et al.,*
No. 6:16-CV-00182-RAW, Order
(E.D. Okla. Dec. 13, 2016) (ECF No. 44).......................................................B

*Kena Utter, et al., v. Amy Colclazier, et al.,*
No. 6:16-CV-00182-RAW, Order
 (E.D. Okla. Dec. 15, 2016) (ECF No. 46)......................................................C

*Kena Utter, et al., v. Amy Colclazier, et al.,*
No. 6:16-CV-00182-RAW, Judgement
(E.D. Okla. Dec. 15, 2016) (ECF No. 47).......................................................D

# Table of Authorities

**CASES**

*Al–Owhali v. Holder,*
  687 F.3d 1236 (10th Cir. 2012) ............................................................ 34

*Anglemeyer v. Hamilton County Hosp.,*
  58 F.3d 533 (10th Cir. 1995) ................................................................ 36

*Bachelder* v. *Am. W. Airlines, Inc.,*
  259 F.3d 1112 (9th Cir. 2001) .............................................................. 50

*Bohn v. Park City Grp., Inc.,*
  94 F.3d 1457 (10th Cir. 1996) .............................................................. 41

*Brock v. Roadway Express, Inc.,*
  481 U.S. 252 (1987) ............................................................................... 39

*Butler v. Rio Rancho Pub. Sch. Bd. of Educ.,*
  341 F.3d 1197 (10th Cir. 2003) ............................................................ 24

*Byrne* v. *Avon Products, Inc.,*
  328 F.3d 379 (7th Cir. 2003) ................................................................ 50

*Christian v. Belcher,*
  888 F.2d 410 (6th Cir. 1989) ................................................................ 39

*Citizens for Peace in Space v. City of Colo. Springs,*
  477 F.3d 1212 (10th Cir. 2007) ............................................................ 42

*Connick v. Myers,*
  461 U.S. 138 (1983) ............................................................................... 43

*Considine v. Board of County Com'rs of County of Adams, State of Colo.,*
  910 F.2d 695 (10th Cir. 1990) .............................................................. 48

*Darby v. Bratch,*
  287 F. 3d 673 (8th Cir. 2002) ......................................................... 56, 57

*Dotson v. Pfizer, Inc.*,
   558 F.3d 284 (4th Cir. 2009) .................................................................. 50

*EEOC v. BCI Coca–Cola Bottling Co. of L.A.*,
   450 F.3d 476 (10th Cir. 2006) .............................................................. 52

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................ 18

*Frank v. U.S.West, Inc.*,
   3 F.3d 1357 (10th Cir. 1993) ............................................................... 18

*Gray v. Baker*,
   399 F. 3d 1241 (10th Cir. 2005) ..................................................... 56, 57

*Green v. City of Hamilton, Housing Authority*,
    937 F.2d 1561 (11th Cir. 1991) .......................................................... 36

*Greystone Constr., Inc. v. National Fire & Marine Ins. Co.*,
   661 F.3d 1272 (10th Cir. 2011) ........................................................... 31

*Hedberg v. Indiana Bell Telephone Company, Inc.*,
   47 F.3d 928 (7th Cir. 1995).................................................................. 53

*Heneghan v. Northampton Community College*,
   493 Fed. Appx. 257 (3rd Cir. 2012)..................................................... 36

*Hertz  v. Luzenac Grp.*,
   576 F.3d 1103 (10th Cir. 2009) ........................................................... 34

*Koopman v. Water Dist. No. 1*,
   972 F.2d 1160, 1164 (10th Cir. 1992) ................................................. 35

*Maldonado–Denis v. Castillo–Rodriguez*,
   23 F.3d 576 (1st Cir. 1994).................................................................. 53

*Mayfield v. Bethards*,
   826 F.3d 1252 (10th Cir. 2016) ........................................................... 24

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973). ........................................................................... 49

*Melton v. City of Okla.,*
    879 F.2d 706 (10th Cir. 1989). ........................................................ 43, 44

*Morgan v. Hilti, Inc.,*
    108 F.3d 1319 (10th Cir. 1997). ............................................................. 49

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
    429 U.S. 274 (1977) ................................................................................. 44

*Pickering v. Board of Education,*
    391 U.S. 563 (1968) .......................................................................... 42, 43

*Rake v. Wade,*
    508 U.S. 464 (1993) ................................................................................. 30

*Richmond v. ONEOK, Inc.,*
    120 F.3d 205 (10th Cir. 1997). ............................................................... 49

*Rife v. Okla. Dep't of Pub. Safety,*
    846 F.3d 1119 (10th Cir. 2017) ........................................................ 41, 49

*Russillo v. Scarborough,*
    935 F.2d 1167 (10th Cir. 1991) .............................................................. 42

*Sutton v. Utah State Sch. for the Deaf & Blind,*
    173 F.3d 1226 (10th Cir. 1999) .............................................................. 24

*Tyler v. Re/Max Mountain States, Inc.,*
    232 F.3d 808 (10th Cir. 2000) ................................................................ 55

*Umholtz v. City of Tulsa,*
    565 P.2d 15 (Okla. 1977). ....................................................................... 40

*United States v. Giovannetti,*
    919 F.2d 1223 (7th Cir. 1990) ................................................................ 53

*United States v. Jewell,*
    532 F.2d 697 (9th Cir. 1976) .................................................................. 53

*United States v. Stadtmauer,*
    620 F.3d 238 (3rd Cir. 2010) ................................................................. 53

*Wilson v. Montano,*
  715 F.3d 847 (10th Cir. 2013) ................................................................. 24

*Yates v. Board of Regents of Lamar University System,*
  654 F. Supp. 979 (E.D. Tex. 1987) ........................................................ 36

**STATUTES**

25 Okla. Stat. § 301 ........................................................................... 1, 9

28 U.S.C. § 1291 ..................................................................................... 2

28 U.S.C. § 1331 ..................................................................................... 2

28 U.S.C. § 1343(3) ............................................................................... 2

28 U.S.C. § 1367(a) ............................................................................... 2

29 U.S.C. § 2601 ..................................................................................... 1

42 U.S.C. § 1983 ..................................................................................... 1

70 Okla. Stat. § 509.6 ................................................................. 8, 16, 25

70 Okla. Stat. § 6-101 ................................................................... 1, 25

70 Okla. Stat. § 6-101.10 ............................................................. 26, 28

70 Okla. Stat. § 6-101.11 ..................................................................... 29

70 Okla. Stat. § 6-101.25 ..................................................................... 30

70 Okla. Stat. § 6-103.4(B) ................................................................. 30

70 Okla. Stat. § 6-189 ........................................................................... 28

**OTHER AUTHORITIES**

Okla. Att'y Gen. Op. No. 81-69, 1981 WL 153885 (1981). ..................... 9

**RULES**

Fed. R. Civ. P. 12(b)(6)................................................................. 34

Fed. R. Civ. P. 16 ........................................................................ 34

**REGULATIONS**

Okla. Admin. Code § 210:35-3-48...................................... 30, 32

**CONSTITUTIONAL PROVISIONS**

Okla. Const. art. 2, § 7 .............................................................. 40

## STATEMENT OF PRIOR OR RELATED APPEALS

None.

# Appellants' Opening Brief

## Statement of Jurisdiction

Kena Utter, Aubree Holsapple, and Dara Campbell ("Teachers")

filed this action in the District Court of Seminole County, Oklahoma, on

April 19, 2016 and shortly thereafter filed an Amended Petition.  (Aplt.

App., Vol. I, at 2.)  The Teachers asserted the following claims:

- federal civil-rights claims brought pursuant to 42 U.S.C. § 1983;
- claims under Okla. Const. art. 2, § 7;
- claims for violations of 25 Okla. Stat. § 301, known as the Oklahoma Open Meeting Act;
- state claims under 70 Okla. Stat. § 6-101, *et seq*., known as the Teacher Due Process Act;
- state breach of contract claims;
- state tort claims;
- a claim for First Amendment retaliation (Dara Campbell only);
- a claim for Family Medical Leave Act retaliation under 29 U.S.C. § 2601(Kena Utter only).

The above claims were brought against the Seminole School

District ("District") and three of the five school board members were

sued individually, including Amie Colclazier, Jack Cadenhead, and

Mickey Upton ("Defendant Board Members").   (*Id.* at 7-27.)

On May 13, 2016, the Defendants removed the case to the U.S.

District Court for the Eastern District of Oklahoma. (*Id.* at 2.)  The

district court had jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343(3), and 28 U.S.C. § 1367(a).

On October 27, 2016, the district court granted Defendants' motion to dismiss, expressly dismissing the Teachers' claims for violation of the Teacher Due Process Act and the § 1983 due process violations.  The court identified the following claims as remaining:  violation of the Oklahoma Open Meeting Act, tortious interference with prospective business interests, First Amendment retaliation, and FMLA retaliation, but did not address the other asserted claims.  (Aplt. App., Vol. I, at 84-87).

The district court denied Teachers' request for leave to amend and Teachers' motion for clarification on December 13, 2016, citing futility as grounds for denying the request for leave to amend.  (*Id.*, Vol. III, at 599-601).  On December 15, 2016, the district court granted Defendants' motion for summary judgment on all remaining claims, except the state law claims of tortious interference with prospective business interests and claims under the Oklahoma Open Meeting Act, both of which were remanded to state court.  (*Id.* at 602-612).

On January 12, 2017, Kena Utter, Aubree Holsapple, and Dara Campbell filed a Notice of Appeal. (*Id.*, Vol. I, at 6.)

This Court has jurisdiction under 28 U.S.C. § 1291.

## Statement of the Issues

I.   **Breach of Contract (All Teachers).** The negotiated agreement covering Teachers specifies that teacher evaluations must be performed by a certified principal who directly observed the teacher and prohibits board members from interfering with a school district's administrative functions.  Here, Defendant Board Members conducted their own assessments of the Teachers' performance based entirely on rumor, disregarding the principals' positive evaluations.  Did the court err by implicitly ruling the negotiated agreement was not violated?

II.  **Procedural Due Process Violation (All Teachers).**   A school district's custom and practice or contract can create constitutionally protected property interests.  Here, multiple district administrators testified to the mutual understanding, custom, and practice of renewing teachers when recommended by their principal and superintendent.  The negotiated agreement also expressly guaranteed all teachers due process.  Did the district court err in ruling a reasonable jury could not find a property interest created by either custom and practice or contract?

III. **First Amendment Retaliation (Dara Campbell Only).** *Pickering* clearly established a teacher's right to address issues of public concern without retaliation.  Here, Defendants concede Dara's speech addressed public concerns, district administrators testified her speech motivated nonrenewal, witnesses contradicted Defendants' post-hoc rationale, Defendant Cadenhead confronted Dara about her speech before nonrenewal, and Defendants offered no reason for nonrenewal before voting.  Did the district court err by ruling Dara's speech neither involved clearly established rights nor substantially affected nonrenewal?

IV.  **FMLA Retaliation (Kena Utter Only).** FMLA retaliation is established by showing protected conduct was a substantial factor in the employer's decision to nonrenew.  Here, Kena used approved morning intermittent FMLA leave to care for her autistic son. Yet Defendant Board Members nonrenewed her because Kena came to school late in the course of exercising her protected right to intermittent leave. Did the district court err in ruling this retaliation did not constitute an FMLA violation?

## Statement of the Case

This case involves the abuse of authority by three school district board members who colluded in secretive conversations to end the careers of three highly evaluated teachers against the recommendations of the school district's own superintendent and principals. As explained more fully below, the Defendant Board Members were motivated by small town bond-issue politics, impermissible conflicts of interest, and a desire to micromanage school staff evaluations and leave issues. While the district court was required to view allegations and factual implications in the light most favorable to the Teachers, the district court instead improperly viewed allegations and evidence in the light most favorable to the Defendants.

## I.    Factual Background[1]

### A.    Majority of board members call superintendent after privately discussing Teachers outside of any open meeting.

Kena Utter, Aubree Holsapple, and Dara Campbell each worked for Seminole Public Schools for two years, receiving excellent ratings on their evaluations. (Aplt. App., Vol. II, at 261, 269, 360, 365, 463.) As the

---

[1] The facts are stated in the light most favorable to Teachers, the parties opposing summary judgment. *See DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1304 n.3 (10th Cir. 2017).

2014-2015 school year came to an end, High School Principal Stephen Osborn recommended Dara Campbell for renewal as the high school Ag teacher after giving her high marks on her evaluation. (Aplt. App., Vol. II, at 463.) Elementary Principal Denise Cheatwood similarly recommended Kena Utter for renewal as her building's first grade teacher after giving her an excellent evaluation. Principal Cheatwood also recommended Aubree Holsapple for renewal as her elementary counselor after Aubree earned an excellent evaluation as well. (*Id*. at 261, 269.) Superintendent Jeff Pritchard concurred with all recommendations. (*Id*. at 231.)

The Teachers, their principals, and the superintendent expected the recommendations would be approved by all five school board members at a school board meeting scheduled for June 11, 2015. (*Id*. at 236, 239, 249, 264, 270, 465.) Throughout the history of the District, if a teacher's principal and superintendent recommended the teacher for rehire, the teacher was always rehired absent financial exigency or program change. (*Id*. at 249-250, 270-271, 313-314, 415, 464-465; *id*., Vol. III, at 526-527, 553, 571-572.)

However, on June 4, 2015, eight days before the board meeting, local attorney and school board member Amie Colclazier contacted Superintendent Pritchard and stated that she was the "swing vote" on

four teachers who were to be recommended for rehire at the June 11, 2015 board meeting.  (Aplt. App., Vol. II, at 229-230.)  Colclazier named Kena Utter, Aubree Holsapple, and Dara Campbell.  (*Id*.)  She also mentioned a fourth teacher, Caleb Gordon, who is not party to this suit.  (*Id.)*  Superintendent Pritchard had never received complaints about the teachers from anyone, none had been discussed at any board meeting or in any executive session, and all had received positive evaluations.  (*Id*. at 231, 236-237.)  He was "baffled" by Colclazier's desire to nonrenew them.  (*Id*. at 239.)

When Superintendent Pritchard asked Colclazier why, she responded that Kena was late every day, Aubree didn't care enough about special education, Dara was unorganized, and Caleb, although his test scores were good, supported the student walkout over the bond issue at the high school.  (*Id*. at 230.)  Colclazier asked Superintendent Pritchard to contact the principals about removing the teachers' names from the rehire list prior to the meeting.  (*Id*. at 231.)  Colclazier then stated she would call Pritchard on Monday to give him a chance to respond and she hung up the phone.  (*Id*.)

Pritchard contacted the principals, who in turn contacted the teachers.  Both Principal Cheatwood and Principal Osborn were

confused about why the board would nonrenew the teachers. (Aplt. App., Vol. II, at 232, 244, 266.)

Attorney and board member Jack Cadenhead then came to Superintendent Pritchard's office the morning of June 8th, 2015, four days before the board meeting, and asked if Superintendent Pritchard was planning to remove Kena, Aubree, Dara, and Caleb from the rehire list, (the same four teachers Colclazier had named). (*Id.* at 231.) Pritchard informed Cadenhead that he was not inclined to remove them. (*Id.*) That same afternoon, Colclazier called Superintendent Pritchard, but he missed the call. When he called her back, she did not ask any questions and stated that she was voting no on the four teachers and that the principals should contact the teachers and give them a chance to remove their own names from the rehire list. (*Id.* at 233.) Finally, at approximately 6:00 p.m. that evening, board member Mickey Upton telephoned Superintendent Pritchard but he missed the call. (*Id.* at 234.) Pritchard called Upton back and upon answering, Upton stated he would be voting no on the four teachers. Pritchard then asked "I assume you mean the same four as Amie and Jack?" Upton responded "yes," and the conversation ended. (*Id.*)

At the June 11, 2015 board meeting, without any discussion, Jack Cadenhead made a motion that all the employees listed on the rehire list

be rehired with the exception of Dara Campbell, Aubree Holsapple, and Kena Utter. (Aplt. App., Vol. I, at 199, Vol. II, at 238). The five member board approved the rehire, and Claudia Willis then moved that Dara Campbell, Aubree Holsapple, and Kena Utter be rehired. (*Id.*, Vol. I, at 199.) Cai Levy and Claudia Willis voted "yes" to rehire the Teachers while Jack Cadenhead, Amie Colclazier, and Mickey Upton voted "no." (*Id.*) Had any one of the three Defendant Board Members changed their vote, Kena, Aubree, and Dara would have been renewed and granted continuing contract status. (*Id.*, Vol. II, at 249.)

At the end of the meeting, Superintendent Pritchard, who had worked for the District for 32 years, resigned in protest of the board's action (*Id.* at 228-229.) In his later deposition, Superintendent Pritchard stated that he believed Colclazier, Cadenhead, and Upton had violated the negotiated agreement by substituting their evaluations of the Teachers' performance for those of the principals[2]. (*Id.* at 242.) Board members Levy and Willis also testified that Colclazier, Cadenhead, and

---

[2] The negotiated agreement was bargained between the Teachers' bargaining unit, the Seminole Association of Classroom Teachers, and the District, and its terms apply to all teachers, regardless of the duration of the teacher's individual contract. (Aplt. App., Vol. I, at 8, 60.) Each individual teacher also has a separate employment contract that is either temporary, i.e. for a fixed duration, or continuing meaning it automatically renews annually. 70 Okla. Stat. § 509.6, *et seq.*

Upton had improperly evaluated the Teachers and improperly interfered with the administrative functions of the school.  (Aplt. App., Vol. III, at 576-578, 582-585.)  Superintendent Pritchard further testified that it was apparent the Defendant Board Members had agreed on a course of action outside of a board meeting before their contacts with him.  (*Id.*, Vol. II, at 234-235.)  Levy and Willis also testified that it was apparent Colclazier, Cadenhead, and Upton decided on a course of action regarding the Teachers outside of any open meeting and never shared their intent or rationale with the remaining board members.  (Aplt. App. Vol. III, at 576-577, 585.)[3]

---

[3] Teachers allege in their remanded state court claim that the Oklahoma Open Meeting Act, 25 Okla. Stat. § 301, was violated when Cadenhead contacted Colclazier and Upton in private about nonrenewing the Teachers.   As the Oklahoma Attorney General recognized: "Permitting a single member of the governing body to obtain consensus or vote of the body by privately meeting alone with each member, would be to conduct decision making by public bodies in secret, which is the very evil against which the Open Meeting Act is directed." Okla. Att'y Gen. Op. No. 81-69, 1981 WL 153885 (1981).  Further, should the removal from the rehire list be set aside due to the Open Meeting Act violations, all three teachers would be considered rehired on continuing contracts and subject to the protections of the Teacher Due Process Act.  (Aplt. App., Vol. I, at 66.)

---

**B.    Board member Cadenhead directly contacts Dara Campbell about her speech regarding the school bond issue.**

Board members Jack Cadenhead and Amie Colclazier had each contacted Dara Campbell during the 2014-2015 school year and told her she was doing a great job as the Agriculture Program Instructor.  (Aplt. App., Vol. II, at 303, 379-381, 429.)  Neither had voiced any concerns to her, until Dara began vocally supporting the school district bond for a new high school.  (*Id*.)

The bond was a divisive issue in Seminole, as part of the community wanted the old high school remodeled while the bond issue proposed a new building at a different location.  (*Id*., Vol. I, at 130-131; *id*., Vol. II, at 297, 331.)  Board members Cadenhead, Colclazier, and Upton were all opposed to the bond issue, while Superintendent Pritchard and board members Cai Levy and Claudia Willis supported the bond, as did Dara Campbell.  (*Id*., Vol. I, at 97, 128; *id*., Vol. II, at 304, 331, 340, 379-381, 382, 387, 426.)  All board members were aware of Dara's support of the bond because she appeared at board meetings to speak about the bond, posted her support on Facebook, and was a vocal community advocate.  (*Id*.)

Board member Cadenhead was strongly opposed to the bond, and he directly contacted Dara about her bond-related Facebook postings

and attempted to "correct" her about her position of support.   (Aplt.

App., Vol. II, at 380-381, 425.)   Dara reported to Superintendent

Pritchard that she felt intimidated and pressured by Cadenhead.  (*Id*. at

240.)

Following the board vote on June 11, 2015, and initiation of this

litigation, Superintendent Pritchard testified to his belief that Dara's

stance on the bond issue played a role in the nonrenewal and that there

was no other legitimate reason for nonrenewal.   (*Id*. at 239-241.)

Principal Osborn testified that there were no reasons other than Dara's

social media bond issue comments that could have impeded her rehire.

(*Id*., Vol. III, at 463, 470-71.)  Additionally, Cadenhead admitted that he

had directly confronted Dara about her stance on the bond issue and

voiced his disagreement with her.   (*Id*., Vol. II, at 425.)  Earlier in his

deposition, Cadenhead testified that it was "not his place" as a board

member to directly contact staff members about school-related issues.

(*Id*., Vol. I, at 142; *id*., Vol. II, at 441.)  Cadenhead had not previously

shared any concerns about Dara with the superintendent, the principal,

or Dara.  (*Id*., Vol. II, at 236, 237, 384-385, 467.)  He also testified that

he did not ever review the principal's evaluation of Dara.  (*Id*. at 440.)

Colclazier had also previously complimented Dara on her program.

(*Id*. at 303-304.)  Colclazier confirmed that the only conversations she

had with Pritchard about any of the three Teachers prior to the June 11, 2015 board meetings were the June 4, 2015 phone call and the June 8, 2015 follow up call. (Aplt. App., Vol. II, at 295, 300-301.) In her deposition Colclazier testified that she based her concerns about Dara on statements from Cadenhead and from the reports of two sets of parents and their children, yet she could not identify the parents or children. (*Id*. at 295-296, 312.) She also stated she never observed Dara performing her duties and did not review Dara's evaluations. (*Id*. at 295, 303, 317.) Colclazier also testified she assessed the Teachers without ever having observed them performing their duties. (*Id*. at 317.)

Colclazier confirmed that she and Cadenhead privately discussed issues relating to the Teachers prior to the June 11, 2015 board meeting. (*Id*. at 294, 302, 308.) Board member Upton similarly confirmed that he based his assessment of the Teachers primarily on Cadenhead's private statements to him shortly before the June 11 board meeting. (*Compare Id*. at 336, to *id*. at 420.)

### C.    Kena Utter exercises approved intermittent morning leave to care for her autistic son and board members nonrenew her because of the intermittent leave.

Kena Utter is a first grade teacher and a divorced single mother with an autistic son who requires direct care during his episodes. (Aplt.

---

APPELLANTS' OPENING BRIEF | 12

App., Vol. I, at 167-170.)  When interviewing for her teaching position in Seminole, she informed Principal Denise Cheatwood of her circumstances and of her need for intermittent leave on mornings when her autistic child needed care.  (*Id.*)  Principal Cheatwood agreed to the intermittent leave and testified that during her two years teaching in Seminole, Kena was an excellent teacher, complied with all intermittent leave arrangements, and had no performance problems.  (*Id.* at 123; *id.*, Vol. II, at 266-269.)

Superintendent Pritchard confirmed that it was the standard practice of the district to have principals deal directly with family medical leave issues and accommodation issues at the building level. (*Id.*, Vol. II, at 244.)  Superintendent Pritchard also stated that the only issue Colclazier identified regarding Kena during her call with him on June 4 was that Kena was late to school.  (*Id.* at 235.)  In their depositions, Cadenhead identified Kena's morning tardiness as the reason he voted to nonrenew her and Upton testified to relying on Cadenhead's statements about Kena.  (*Id.* at 344, 430-431.)

### D. Board member and attorney Jack Cadenhead has undisclosed conflict of interest and acts on behalf of his private legal client, a coworker of Kena and Aubree who wants them removed.

During Cadenhead's deposition, he was asked where he gathered information about Kena Utter and Aubree Holsapple. (Aplt. App., Vol. II, at 417-419, 433-434.) He first refused to identify the party he questioned, asserting attorney client privilege, and then said he couldn't remember. (*Id.*) As his testimony progressed, it became clear that Cadenhead was the personal attorney for a teacher, Lacey Davis, employed by the District; that Davis was a fellow staff member of Kena and Aubree; and that Davis did not like either Kena or Aubree. (*Id.*, Vol. I, at 152, 164-165; *id.*, Vol. II, at 279.) Specifically, Davis had complained to Cadenhead that Kena came to school late at times and Davis didn't like it when the principal made her cover for Kena's class. (*Id.*, Vol. I, at 152; *id.*, Vol. II, at 431.) She also informed Cadenhead that Aubree didn't handle special education well. (*Id.*, Vol. II, at 419.) Cadenhead also identified Carolyn Upton Green (Board member Upton's sister-in-law), but at first stated he could not remember what she said to him and then simply refused to answer. (*Id.* at 435.)

Denise Cheatwood, the principal for Kena and Aubree as well as Cadenhead's client, Lacey Davis, stated in her deposition that Davis did

---

not get along with Aubree and Kena, for unknown reasons. (Aplt. App.,

Vol. II, at 279.) Principal Cheatwood told Davis that she would not

discuss specifics of Kena's arrangements. (*Id*.) Cheatwood also stated

that contrary to Davis' assertions, Aubree was not responsible for special

education student placements or decisions, but just forwarded

paperwork to the appropriate parties and served as the District

representative at certain meetings. (*Id*. at 280-281.) The only complaint

Cheatwood received about special education related to Aubree was once

about a paperwork issue, but in that case Aubree had just been following

Cheatwood's instructions. (*Id*.)

Cadenhead did not disclose the conflict of interest and did not

recuse himself from any votes regarding the renewal of the three

Teachers. (*Id*., Vol. I, at 152, 164-65; *id*., Vol. II, at 279.)

## II.    **Procedural History**

Kena Utter, Aubree Holsapple, and Dara Campbell filed this

action in Oklahoma state court on April 19, 2016. (*Id*., Vol. I, at 2.) The

three teachers asserted federal civil-rights claims, First Amendment

retaliation, FMLA retaliation, claims under the Oklahoma Constitution,

state breach of contract claims, and state tort claims against the District

and against Defendant Board Members. (*Id*. at 7-21.) Following their

initial filling of the case, the District notified the Teachers that the

District's response to their requests for file copies had been incomplete,

and the District subsequently provided copies of temporary contracts for

the Teachers, (the original disclosure contained only copies of continuing

contracts)[4].    (Aplt. App., Vol. I, at 7-21.)   Teachers accordingly amended

their state court petitions on May 2, 2016 to reflect the newly disclosed

information.   (*Id*.)

On May 13, 2016, the Defendants removed the case to the U.S.

District Court for the Eastern District of Oklahoma. (*Id*. at 2.)

Defendants filed an Answer and Partial Motion to Dismiss on May

19, 2016 (*Id*. at 29.)  On October 27, 2016, the district court granted

Defendants' motion, expressly dismissing the Teachers' claims for

violation of the Teacher Due Process Act and the constitutional due

process violations, and identified the following claims as remaining:

violation of the Oklahoma Open Meeting Act, tortious interference with

prospective business interests, First Amendment retaliation, and FMLA

retaliation.  (*Id*. at 84-87.)  The district court did not address the

Teachers' claims based on violations of the negotiated agreement that

---

[4] Teachers hired on temporary contracts are employed for only one year, but upon rehire at the end of the second year, teachers have continuing contracts that automatically renew annually thereafter.  70 Okla. Stat. § 509.6, *et seq*.

were unrelated to the Teacher Due Process Act or the Teachers' claims based on the Oklahoma Constitution.  Rather, the district court implicitly dismissed those claims by not listing them as remaining, and presumably ruled that the negotiated agreement was not applicable to teachers unless the teachers were also covered by the Teacher Due Process Act.   (Aplt. App., Vol. I, at 84-87.)  Neither did the court address the Teachers' argument that they were entitled to the protections of the Teacher Due Process Act because the board's violation of the Open Meeting Act resulted in the Teachers' renewal on continuing contracts. (*Id*. at 66.)

On November 14, 2016, Teachers filed a motion seeking clarification of the court's dismissal because the order failed to address the Teachers' contract claims premised on violations of the negotiated agreement and Teachers' claims based on Oklahoma's Constitution.  (*Id*. at 88.)  Also on November 14, 2016, Defendants filed a Motion for Summary Judgment on all remaining claims.  (*Id*. at 92.)

On December 5, 2016, (while awaiting a ruling on the clarification motion, prior to the scheduled pretrial conference, and fourteen days after the discovery cutoff), Teachers filed a motion seeking leave to amend their petition to conform to evidence gathered through discovery, including entirely new claims premised on Cadenhead's conflict of

interest that was not disclosed prior to discovery and due process claims based on deposition testimony demonstrating a mutual understanding, custom, and practice of rehiring teachers who were recommended for rehire by both their principal and superintendent. (Aplt. App., Vol. I, at 3, 88; *id.*, Vol III, at 479, 481-484).

The district court denied both of Teachers' motions on December 13, 2016. (*Id.*, Vol. III, at 599-601). In denying leave to amend based on futility, the district court ruled that the Teachers' second amended petition contained no new claims and reiterated the court's position that the Teachers' claims based on breach of the negotiated agreement were somehow dependent upon the applicability of the Teacher Due Process Act. (*Id.* at 599.) The court did not mention the fact that the motion was filed only fourteen days after the discovery cutoff, prior to the pretrial, and contained additional claims related to board member Cadenhead's newly discovered conflict of interest and the District's custom and practice. (*Id.*) Rather, the court again reiterated its reliance on cases addressing the Teacher Due Process Act as grounds for denying leave to amend. (*Id.*, Vol. III, at 599.) The court ruled that the amendment was futile and did not discuss the issue of prejudice to the opposing party or any of the other factors enumerated by *Foman v. Davis,* 371 U.S. 178, 182 (1962) or *Frank v. U.S.West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993).

The court not only viewed the evidence in the light most favorable to the Defendants in making its ruling, but the court went so far as to create a factual reference in Defendants' favor that is unsupported by the record, i.e. that there was a "written policy" that conflicted with the custom and practice alleged by Teachers. (Aplt. App., Vol. III, at 600.)

On December 15, 2016, the district court granted Defendants' motion for summary judgment on all remaining claims, except the state law claims of tortious interference with prospective business interests and claims under the Oklahoma Open Meeting Act, both of which were remanded to state court. (*Id.* at 602-612.)

First, with respect to Dara's First Amendment retaliation claim, the court simply accepted as true Defendants' allegations that they received and relied on community complaints rather than retaliating against Dara's protected speech. (*Id.* at 602-612.) The court disregarded the Teachers' allegations and evidence challenging the credibility of both the statements and their reported receipt, including the fact that Colclazier could not identify the parents who allegedly complained to her, that Colclazier and Cadenhead told Dara she was doing a great job and never previously mentioned complaints or problems, and that Upton relied primarily on Cadenhead's secondhand allegations. (*Id.* at 608.) The court went on to rule that the Defendants were immune from suit,

finding that Dara's First Amendment right to speak on the bond issue was not clearly established, even though her speech directly addressed school finance issues and was analogous to the teacher's speech in *Pickering*. (Aplt. App., Vol. III, at 609.)   Instead, the court focused its ruling on the Defendant Board Members' right to vote.  (*Id*.)

As for Kena's FMLA claim, the court ruled that Kena failed to establish a *prima facie* case of retaliation despite evidence showing that Defendants voted to nonrenew her because she took intermittent leave. (*Id*. at 610.)  The court also ruled that the board had sufficient nondiscriminatory reasons to terminate, despite Kena's evidence to the contrary from both Principal Cheatwood and Superintendent Pritchard, who each testified there were no performance problems. (*Id*. at 611.) The court then ruled the board members were immune, holding Kena's right to intermittent leave under the FMLA was not clearly established. (*Id*.)  When making its qualified immunity ruling with respect to Kena's claims, the court also incorrectly stated the violated rights were constitutional, rather than statutory (FMLA), incorrectly intermixed the fact patterns of Dara and Kena, and again focused on the Defendant Board Members' right to vote.  (*Id*. at 612.)

The Teachers appeal each of the district court's rulings and discuss their rationale below.

## Summary of the Argument

The district court erroneously concluded that the Teachers' claims for breach of the negotiated agreement were somehow dependent on the application of the Teacher Due Process Act. The court ignored the negotiated agreement and failed to enforce the clear contractual and regulatory restrictions prohibiting board members both from directly evaluating the Teachers and from interfering with the administrative functions of the school district.

The district court also erred in dismissing, and denying leave to amend to include, the due process claims premised on both the established custom and practice of the school district as well as the negotiated agreement's express due process requirement. In so doing, the district court disregarded the testimony of the superintendent, principals, and two board members regarding the existence of the established custom and practice of rehiring teachers who were recommended for rehire by their principal and superintendent. Furthermore, the court ignored the application of the due process language in the contract itself as well as the due process guarantees of the Oklahoma Constitution.

With respect to Dara Campbell's First Amendment retaliation claim, the district court erroneously held that Dara's right to speak

about school finance issues was not clearly established, ignoring the parallels to the facts of *Pickering* itself, and instead focused its ruling on the individual Defendant Board Members' right to vote.   The district court also disregarded Dara's evidence showing her performance was excellent and there were no complaints or problems according to both her principal and superintendent.  The court instead chose to characterize all facts in the light most favorable to the Defendants, even though their pretextual allegations were based entirely on secondhand reports, in most cases from unidentified parties who were directly contradicted by other testimony.   The district court also disregarded the evidence that Colclazier and Cadenhead had in fact complimented Dara about the very work they later criticized.

Finally, the district court improperly ruled that Kena failed to establish a *prima facie* case of FMLA retaliation, ignoring the admissions of Colclazier, Cadenhead, and Upton that they nonrenewed Kena because she came to school late, which was the very intermittent leave protected under the FMLA.  Similarly, in ruling the board had "legitimate nonretaliatory reasons" for nonrenewal, the court gave more weight to the board members' hearsay reports than the direct observations of Kena's principal, who contradicted the board members' assertions.

As to all claims, the court also ignored the credibility issues raised by the fact that Cadenhead, as a private attorney and while serving as a board member, improperly represented and acted on behalf of a school district employee who wanted her coworkers, Kena and Aubree, fired. He hid his conflict of interest and attempted to hide the source of the hearsay on which he based his assessment, even in his deposition. While testifying that it was "not his place" as a board member to directly interact with staff regarding school issues, he then admitted gathering negative information about Kena and Aubree *directly from school staff*; he also repeatedly contacted Dara about the school bond issue. Additionally, Superintendent Pritchard's account of events and conversations with Cadenhead, Colclazier, and Upton directly contradict their accounts, necessitating a credibility choice that the district court improperly made in the Defendants' favor.  Further weighing evidence in the Defendants' favor, the district court never made mention of the fact the board members hid their rationale and intent from public view and from other board members throughout the process.

# Argument

I.   **The district court erred in concluding that the Teachers' claims for breach of the negotiated agreement during their employment were dependent on the applicability of the Teacher Due Process Act.**

When reviewing the district court's grant of the Defendants' motion to dismiss the Teachers' claims for breach of the negotiated agreement, this court must view "all well-pleaded allegations of the complaint as true and consider them in the light most favorable to the nonmoving party." *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1199 (10th Cir. 2003) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). "To survive a motion to dismiss, a complaint must allege facts that, if true, 'state a claim to relief that is plausible on its face.' A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)).

The primary difficulty in appealing the district court's dismissal of the Teachers' breach of contract claims is that the district court never directly ruled on those issues.  (Aplt. App., Vol. I., at 85.)  Rather, the district court misstated the Teachers' claims when it asserted only that "Plaintiffs claim that the School District breached their contracts by

failing to renew them arguing that the collective bargaining agreement provided for compliance with the TPDA." (Aplt. App., Vol. I, at 4.) Contrary to the district court's order, the Teachers very clearly set out claims for breach of the negotiated agreement provisions governing teacher evaluations and board interference in district administrative affairs, both of which occurred during the term of the Teachers' contracts and neither of which have any relationship to the Teacher Due Process Act. (*Id*. at 10, 12.) The district court implicitly dismissed the contract claims without giving any specific grounds and instead referenced the unrelated Teacher Due Process Act in both the original dismissal and in denying the Teachers' request for clarification and request for leave to amend. (*Id*. at 83-86.)

Contrary to the district court's assertion, the statutory authorization for districts and teachers to bargain a negotiated agreement, like the agreement in the present case, is entirely separate and distinct from the Teacher Due Process Act. 70 Okla. Stat. § 509.6, *et seq*., *requires* school districts to negotiate contract terms with the designated representatives of education employee groups. Conversely, the Teacher Due Process Act, which is found at 70 Okla. Stat. § 6-101, *et seq*., sets forth the minimum due process protections that must be afforded individual school employees.

There is no provision in the Teacher Due Process Act that conflicts with the negotiated agreement provisions at issue in the present case, and the Teacher Due Process Act in no way impinges the ability of a teachers' bargaining unit to negotiate terms related to the evaluation of teachers. To the contrary, 70 Okla. Stat. § 6-101.10 specifically authorizes districts and teachers to negotiate matters related to teacher evaluation:

> Each school district board of education shall maintain and annually review, following consultation with or involvement of representatives selected by local teachers, a written policy of evaluation and corresponding professional development for all teachers and administrators. In those school districts in which there exists a professional negotiations agreement made in accordance with Section 509.1 et seq. of this title, the procedure for evaluating members of the negotiations unit and any standards of performance and conduct proposed for adoption beyond those established by the State board of Education shall be negotiable items. Nothing in this section shall be construed to annul, modify or to preclude the renewal or continuing of any existing agreement heretofore entered into between any school district and any organizational representative of its employees….

70 Okla. Stat. § 6-101.10.

In the present case, the Seminole Association of Classroom Teachers ("SACT"), was the recognized bargaining agent for all teachers in Seminole Public Schools. (Aplt. App., Vol. I, at 8, 60.) The SACT

bargained a negotiated agreement with the Seminole School Board that covers all teachers in the District, irrespective of the duration of the individual teacher's contract. (Aplt. App., Vol. I, at 8, 60.) Article XI Section 11.2 of that negotiated agreement provides in pertinent part as follows "Each evaluation shall be based upon the evaluator's actual observation and knowledge of the teacher evaluated while performing his/her job function. Teachers will be evaluated by principals, as required by law." (*Id*. at 176.)

The Teachers have alleged that the Defendant Board Members improperly directly evaluated their performance based on hearsay, in violation of both the negotiated agreement and statutory requirements. (*Id*., Vol. I, at 22; *id*., Vol. II, at 242, 316-317, 347, 420-421; *id*., Vol. III at 577-578, 582-585.) This claim is supported by the testimony of the District's own principals and the superintendent as well as the admissions of the Defendants themselves. (*Id*.) The Defendant Board Members were not certified principals, did not observe the teachers, and had no evaluation training. (*Id*., Vol. II, at 275, 317, 345-346, 350, 440.) Cadenhead, Colclazier, and Upton each testified in depositions that they were qualified to evaluate teachers, despite lacking certification or training. (Aplt. App., Vol. II, at 316-317, 347, 420-421.) Upton specifically testified to the following:

> Q      Are you aware that that agreement requires that each
> teacher be evaluated only by her administrator or his
> administrator?
> A      Yes.
> Q      Do you believe you are qualified to evaluate a teacher?
> A      Yes.
> Q      Tell me why.
> A      Because I'm a teacher. I taught my son to read
> Q      Are you certified to teach?
> A      No
> Q      Are you a certified administrator?
> A      No
> Q      But you do believe you are qualified to evaluate a
> teacher?
> A      Yes.[5]

(*Id*. at 347.)

In addition to believing that they were each qualified to evaluate teachers despite lacking credentials or training, the Defendant Board Members did not review the principals' evaluations of the Teachers and based their assessments of the Teachers' performance solely on second-hand reports.

More specifically, the evaluation training lacked by the Defendant Board Members is required by 70 Okla. Stat. § 6-101.10(C), which reads as follows:

> All individuals designated by the school district board
> of education to conduct the personnel evaluations

---

[5] Unlike the certification and testing statutorily required to serve as a school principal or superintendent in Oklahoma under 70 Okla. Stat. § 6-189 *et. seq.*, as this exchange illustrates, no basic skills or knowledge test is required before an individual can sit on a school board.

> shall be required to participate in training conducted
> by the State Department of Education or training
> provided by the school district using guidelines and
> materials developed by the State Department of
> Education prior to conducting evaluations.

*Id.*

70 Okla. Stat. § 6-101.11 also requires that each teacher receive a

copy of his or her evaluation and further guarantees each teacher a

chance to respond to that evaluation in writing:

> Whenever any evaluation is made of a teacher
> or administrator, a true copy of the evaluation
> shall be presented to the person evaluated, who
> shall acknowledge the written evaluation by
> signing the original. Within two (2) weeks after
> the evaluation, the person evaluated may
> respond and said response shall be made part
> of the record.

*Id.*

The above statutes and the parallel negotiated agreement language,

while not guaranteeing a right to a full hearing, do guarantee every

teacher the minimal right to be evaluated by a certified principal who

observed them, to receive the evaluation on which decisions about their

performance are based, and to respond to the evaluation in writing.  (Aplt.

App., Vol. I, at 176.)

Individual board members cannot lawfully substitute their own

secretive, second-hand assessment of a teacher's performance for the

official evaluation of the certified principal who directly observes the teacher.[6]   To the extent that the Defendants argue their independent, hearsay-based assessments of the teachers' performance are not "evaluations," such a finding would render meaningless the contractual, statutory, and regulatory requirements governing teacher evaluations.  A statute should not be construed in a way that renders the statute itself or its phrases meaningless, redundant, or superfluous. *Rake v. Wade,* 508 U.S. 464, 471–472 (1993) and *Greystone Constr., Inc. v. National Fire &*

---

[6] A school board does have the authority, when acting in its quasi-judicial capacity, to render an independent decision in an administrative hearing that may contradict a principal's recommendation for rehire and evaluation after both notice and the opportunity comment is provided to the affected school employee.  *See* 70 Okl. St. Ann. § 6-101, *et seq.* In the present case, however, the board clearly did not comply with the basic due process prerequisites to quasi-judicial action and was acting in a direct administrative/executive capacity in violation of both the negotiated agreement and the restrictions on board authority found in Okla. Admin. Code § 210:35-3-48, which reads in pertinent part as follows: "(3) The local board and its individual members shall refrain from involvement in or interference with the administrative functions of the school." (*Id*. at 12.).  Additionally, the Oklahoma legislature long ago abolished the right of a school board to independently terminate or nonrenew teacher without a Superintendent's recommendation: former 70 Okla. Stat. § 6-103.4(B), allowed a school board to nonrenew or dismiss a teacher "on its own volition."  That statute was repealed in 1989.  *Id*.  It was replaced by the Teacher Due Process Act, more specifically 70 Okla. Stat. § 6-101.25, which limits the authority to recommend dismissal and nonrenewal of a teacher to the Superintendent only.  *Id*.  Under Oklahoma's current statutory scheme, a school board has no independent authority to nonrenew or terminate a teacher without first receiving a Superintendent's recommendation.  *Id*.

---

*Marine Ins. Co.,* 661 F.3d 1272, 1283–1284 (10th Cir. 2011). The district court's ruling, or lack of ruling, renders both the applicable statutes and contract language meaningless in the present case.

The evidence submitted by the Teachers demonstrates that the District and Defendant Board Members breached the negotiated agreement and statutory evaluation requirements: The Defendant Board Members disregarded the principals' evaluations and in bad faith secretly evaluated the Teachers based on hearsay alone without having the legally required training or certifications. (Aplt. App., Vol. II, at 275, 317, 345-346, 350, 440.) The Defendant Board Members then substituted their own unwritten evaluations for the evaluations of the principals and acted on their unwritten evaluations by nonrenewing the Teachers without ever notifying the teachers of the concerns or giving the Teachers the opportunity to respond in writing. (*Id.*)

Per Pritchard's testimony, Cadenhead, Colclazier, and Upton did not give him the chance to respond to their intent to nonrenew the Teachers or ask for his input or that of the principals. (*Id.* at 230-250.) Superintendent Pritchard, Principal Cheatwood, Principal Osborn, board member Levy, and board member Willis also all testified that the Defendant Board Members improperly evaluated the Teachers directly and inaccurately, violating the above-cited negotiated agreement

provisions and directly infringing on the administrative functions of the District.  (Aplt. App., Vol. I, at 22; *id.*, Vol. II, at 242, 316-317, 347, 420-421; *id.*, Vol. III, at 577-578, 582-585.)  The district court erred in ignoring this evidence and dismissing the Teachers' claims.

The district court also erred by ignoring the Teachers' claim that the Defendant Board Members breached the negotiated agreement by failing to abide by regulatory restrictions on direct board involvement in, and interference with, school administrative functions.  Specifically, Article II, Section 2.1 of the negotiated agreement between the board and SACT provides in part, as follows: "The board and the Association agree to abide by all state and federal statutes, rulings, and regulations." (*Id.*, Vol. I. at 21.)  Among those regulations is Okla. Admin. Code § 210:35-3-48, which reads in pertinent part as follows: "(3) The local board and its individual members shall refrain from involvement in or interference with the administrative functions of the school."  (*Id.* at 12.) The board members exceeded their statutory and regulatory authority, violated the negotiated agreement, and have created a unique circumstance where three school board members are directly at odds with the evaluations and recommendations of their own principals and superintendent as well as the votes of the only two board members who acted within the scope of their duties.

The Teachers have presented sufficient evidence from which a reasonable jury could find that the District and Defendant Board Members violated the negotiated agreement. Furthermore, whether the above cited contractual provisions have been violated is a question of fact for the jury. The district court erred by both failing to directly address the breaches of the negotiated agreement and implicitly ruling that the negotiated agreement's enforceability was tied to or dependent upon the applicability of the Teacher Due Process Act.

II.  **The district court erred in ruling no reasonable jury could find a property interest was created either by the District's custom and practice of rehiring teachers recommended by their superintendent and principal or by the express negotiated agreement provision guaranteeing all teachers due process.**

The district court denied Teachers' request for leave to amend their petition to include an additional due process claim premised on creation of a property interest through mutual understanding, policy, and practice, concluding that the proposed amendment would be futile. The court also dismissed Teachers' due process claims premised on the plain language of the negotiated agreement that guarantees due process for all teachers. Each of the District's administrators and board members were speaking agents of the District, and the Teachers' counsel could not directly interact with them to gather the additional evidence

necessary to support the custom and practice claim until depositions. (Aplt. App. Vol. II, at 483.)  Further, the Teachers' claims would have been merged into the pretrial order, but no agreed pretrial order was ever approved.  Fed. R. Civ. P. 16.   (*Id.* at 481.)

The court reviews the grant of a motion to dismiss de novo, and to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face.  *Al–Owhali v. Holder,* 687 F.3d 1236, 1239 (10th Cir. 2012).  Where a district court's denial of leave to amend is based solely on futility, the Court also applies a de novo standard of review.  *Hertz  v. Luzenac Grp.,* 576 F.3d 1103, 1117 (10th Cir. 2009) ("[W]hen denial is based on a determination that amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility.")  Hence, the de novo standard of review applies both to the court's denial of the Teachers' request to add custom and practice claims and to the 12(b)(6) dismissal of Teachers' due process claims premised on the negotiated agreement.

Just as the district court ignored the express contractual claims based on the negotiated agreement, the district court ignored the Teachers' allegations that the principals, superintendent, and two board members attested to the custom and practice of the District that when a

temporary teacher was recommended for rehire by their principal and superintendent, the teacher would be rehired absent financial exigency or program change. (Aplt. App., Vol. I, at 20; *id*., Vol. III, at 503.)  The district court also ignored the Teachers' due process claims premised upon the negotiated agreement language guaranteeing due process to all teachers.  (*Id*., Vol. I, at 10.)  The court never addressed the existence of the contract language in question or its meaning, but again ruled all sections of the negotiated agreement were inapplicable to Teachers and referenced the Teacher Due Process Act.  (*Id*., Vol. I, at 81-87.)

In dismissing the Teachers' claims and denying leave to amend, the court made factual presumptions in favor of the Defendants and failed to address the fact that "[M]utually explicit understandings arising from an employer's custom and practice are one source of property interests." *Perry v. Sindermann,* 408 U.S. 593, 601–603 (1972). Contrary to the district court's ruling, whether custom and practice or an express or implied contract provision creates a property interest in employment is a question of fact for the jury. *Koopman v. Water Dist. No. 1,* 972 F.2d 1160, 1164 (10th Cir. 1992).

More specifically, the question must be left to a jury if there is a reasonable inference that the Teachers have a property interest created by custom and practice.  *Anglemeyer v. Hamilton County Hosp.,* 58 F.3d

533, 537 (10th Cir. 1995) (whether an implied contract exists thereby creating a property interest in employment is normally a question of fact for the jury to decide);  *See Heneghan v. Northampton Community College*, 493 Fed. Appx. 257, 260 (3rd Cir. 2012) ("The district court determined that Heneghan's fleeting tenure appointment created a question of fact as to whether he had a protected property interest in his employment."); *Green v. City of Hamilton, Housing Authority*, 937 F.2d 1561, 1563 (11th Cir. 1991) ("Because we conclude Green's allegations and supporting affidavits raise questions of fact regarding a property interest in continued employment under Alabama law, we vacate the summary judgment and remand for further proceedings."); and *Yates v. Board of Regents of Lamar University System*, 654 F. Supp. 979, 981 (E.D. Tex. 1987) ("Nevertheless, this court cannot rule as a matter of law that plaintiff had no property interest in continued employment. Plaintiff has produced some evidence of an understanding on the part of university officials that non-probationary employees could only be dismissed for cause. A genuine issue of material fact remains as to whether plaintiff enjoyed a property interest because of prevailing custom and practice at Lamar University.")

Here, the Teachers assert that the District had a custom and practice of rehiring temporary teachers when those teachers were

recommended for renewal by their principal and superintendent, absent financial exigency or program change. (Aplt. App., Vol. III, at 503.) In fact, even the Defendant Board Members testified that the circumstances presented by this case, where teachers were recommended for renewal by the principal and superintendent but were not rehired, had never before arisen. (*Id.*, Vol. II, at 314, 415.) Superintendent Pritchard, a 32 year veteran of the District, also confirmed that teachers recommended for rehire by their principal and superintendent had always been rehired, absent financial exigency or program change, as did Principal Cheatwood and Principal Osborn. (*Id.*, Vol. II, at 249, 250, 270-271, 313-314, 415, 464-465; *id.*, Vol. III, at 526-527, 571, 584-585.) Board member Claudia Willis and board member Cai Levy also testified to the established mutual understanding, custom and practice in Seminole Public Schools that if a teacher was recommended for rehire by the teacher's principal and superintendent, the teacher was always rehired absent financial exigency or program change. (Aplt. App., Vol. II, at 263-264, 464-465; *id.*, Vol. III, at 526-527, 571-573, 585-585.) Each also testified that the Teachers had a reasonable expectation of being rehired based on the District's mutual understanding, custom, and practice. (*Id.*)

In the present case, the expectation of rehire was shared by the two board members, the superintendent, and the Teachers' principals, creating an even more objective expectation in rehire and "tenure" than existed in *Sindermann*. In *Sindermann*, a nontenured professor alleged his employer had a custom and practice that gave rise to a reasonable expectation of tenure, and both the court of appeals and the United States Supreme Court overturned the district court's grant of summary judgment against the teacher, holding that "…the respondent has alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment…" *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). In *Sindermann* the employee's supervisor and administrators sided with the board of regents *against* Sindermann's allegation of custom, practice, and mutual understanding. *Id.* at 594-595. *See also Board of Regents v. Roth*, 408 U.S. 564, 571-572 (1972). Uniquely, in the present case, the Defendants' own superintendent and principals, along with two of the defendants' own board members, are very much not aligned with the three Defendant Board Members and are instead directly opposed to their actions *because the three board members directly interfered with the administrative functions of the school by directly evaluating the teachers*.

The allegations of the Teachers, including supporting testimony of custom, practice, and mutual understanding by the superintendent, principal, and two board members, constitute a sufficient basis for a reasonable jury to find a custom and practice that gave rise to a cognizable property interest. *See Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260-61, 264 (1987) (Secretary of Labor's testimony to established practice of the Department of Labor was sufficient to support proof of Department of Labor custom and practice establishing underlying due process violation) and *Christian v. Belcher*, 888 F.2d 410, 417 (6th Cir. 1989) (Defendant/County Magistrate's testimony to custom of reappointment after change in administration, and Defendant County Judge Executive's admission that plaintiff/county employee was the only employee ever not reappointed after change in administration, constituted sufficient evidence of custom and practice to give rise to a protected property interest in continued employment).

Here, the district court not only ignored the Teachers' evidence of custom and practice, but went so far as to create evidence for the Defendants that has no support in the record. Specifically, the court held there was a "written policy" that conflicted with the custom and practice alleged by Teachers. (Aplt. App., Vol. III, at 600.) The district court offered no citation, reference, or language to support this assertion,

and there is no conflicting policy. (*Id*.) Neither does any portion of the negotiated agreement contradict the mutual understanding, custom, and practice alleged here.

To the contrary, the written negotiated agreement guarantees minimal due process for all teachers, as Article IX, Section 9.3 expressly provides that "No teacher shall be suspended, demoted, or terminated without due process." The Defendants previously conceded in their answer that the Teachers were terminated and/or nonrenewed, which triggers the application of this contractual provision. (*Id*., Vol. I, at 61, ¶ 8.) This language expressly guarantees all teachers at least minimal due process, even if the due process for temporary teachers is not a full hearing. Here again, the district court ignored this language as a basis for the Teachers' due process claims.

This right to at least minimal due process is further bolstered by the Oklahoma Constitution, as Okla. Const. art. 2, § 7 affords public employees greater due process protection than the fourteenth amendment to the United States Constitution where a negotiated agreement contains some degree of due process protection. *Umholtz v. City of Tulsa*, 565 P.2d 15, 24 (Okla. 1977). In *Umholtz*, the Oklahoma Supreme Court specifically recognized "that Article 2, Section 7 of the Oklahoma Constitution affords minimal procedural protection to persons

who by contract or law have a limited right to hold their jobs or to be free from discipline "unless good cause is shown." Those granted such a right have a "minimal expectation of security" based upon the expectation that the employer will engage in an honest inquiry and employ job related criteria in disciplining or terminating employees." *Id.* at 24. The language in the Teachers' negotiated agreement guarantees them at least the minimal due process guarantee found by the *Umholtz* court. As with the clearly stated negotiated agreement violations, the district court further erred by ignoring the Teachers' due process claim under the Oklahoma Constitution.

### III. The district court erred in concluding that Dara's right to speak on issues of school finance was not clearly established and erred in disregarding Dara's evidence directly contradicting the board asserted nondiscriminatory reasons for nonrenewal.

The Court reviews the district court's grant of Defendants' summary judgment motion on Dara's First Amendment retaliation claim de novo. *Rife v. Okla. Dep't of Pub. Safety*, 846 F.3d 1119, 1123–1124 (10th Cir. 2017). In doing so, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in her favor. *See Bohn v. Park City Grp., Inc.,* 94 F.3d 1457, 1460 (10th Cir. 1996). "Summary judgment is appropriate when there is no genuine

dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir. 1991).  Additionally, with respect to First Amendment claims, the court has "an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Citizens for Peace in Space v. City of Colo. Springs,* 477 F.3d 1212, 1219 (10th Cir. 2007).

While the Defendants and the district court each acknowledged that Dara's speech related to a matter of public concern, the court improperly analyzed the remainder of the *Pickering* balancing test in granting Defendants' motion for summary judgment.  The district court also failed to defer to the jury as to the final two prongs of the *Pickering* test.

As *Pickering* held, the First Amendment to the United States Constitution prevents a school district from retaliating against a teacher for exercising her right to freedom of speech.  *Pickering v. Board of Education*, 391 U.S. 563 (1968).  *Pickering* dealt with the same specific issue presented by Dara's claim: a teacher speaking out publicly regarding school finance issues.

> More importantly, the question whether a school system requires additional funds is a matter of legitimate public concern on which the judgment of the school administration, including the School board, cannot, in a society that leaves such questions to popular vote, be taken as conclusive. On such a question free and open

> debate is vital to informed decision-making by the electorate. Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.

*Id.* at 571, 572.

In reviewing a public employee's First Amendment retaliation claim, the courts apply the four-step test derived from *Pickering and Connick v. Myers,* 461 U.S. 138 (1983).  *See also Melton v. City of Okla.,* 879 F.2d 706 (10th Cir.1989).  First, the court must determine whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." *Connick,* 461 U.S. at 146.  The Defendants in the present case have already stipulated that Dara's speech addressed a matter of public concern.  (Aplt. App., Vol. I, at 105.)

The second step of the test requires the court to balance the employee's interest, as a citizen, in commenting upon matters of public concern against "the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees." *Pickering,* 391 U.S. at 568.  As to this second step, the Defendants have at no point asserted that their interest in efficiency outweighs, or was even affected by, Dara's bond-issue related speech.  The district court's order attempts to shoehorn the Defendant Board Members' "right to

vote" into the analysis of this prong, but that attempt is not consistent with *Pickering*; it is the District's interest in specifically preventing Dara's speech about the bond that must be analyzed as opposed to the Defendant Board Member's desire to be free from any restrictions in how they vote. (*Id.*, Vol. III, at 608-609.)

Assuming that the first two prongs of the *Pickering* balancing test tip in favor of the employee, which in this case they do, under the third step, Dara must proffer sufficient evidence from which a reasonable jury could conclude that her protected speech was a substantial or motivating factor in her nonrenewal. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Melton,* 879 F.2d at 713, 716. Finally, if Dara makes this showing, the burden then shifts to the District and Defendant Board Members to show "by a preponderance of evidence that it would have reached the same decision ... even in the absence of the protected conduct." *Mt. Healthy,* 429 U.S. at 287. Steps one and two concern whether the expression at issue is subject to the protection of the First Amendment. Thus, they present legal questions to be resolved by the court. In contrast, the third and fourth steps concern causation and involve questions of fact to be resolved by the jury. *Melton,* 879 F.2d at 713.

The district court in the present case improperly characterized the evidence in the light most favorable to the Defendants and decided the third and fourth prongs itself rather than properly leaving those issues for the jury.  (Aplt. App., Vol. I, at 608-609).  As to the third and fourth prongs, Dara has offered the following evidence in support of her allegations that her speech was a substantial or motivating factor behind the District's and Defendant Board Members' decision to nonrenew her and that the District and Defendant Board Members would not have arrived at the same decision in the absence of her protected conduct:

- Board member Cadenhead's direct contact with Dara about her stance on the bond, despite Cadenhead's testimony that it was "not his place" to directly contact staff about a school related issue. (Aplt. App., Vol. I, at 142; *id.*, Vol. II, at 240, 380-381, 425, 441.)

- The absence of any other negative interaction or issue between Dara and any board member, administrator, or community member prior to the June 11, 2015 board meeting, apart from Cadenhead's disagreement with her about the bond.  (*Id.*, Vol. II, at 303, 379-381, 429.)

- Board member Cadenhead's positive comments to Dara that directly contradict Cadenhead's alleged concerns. (*Id.* at 303-304.)

- Board member Colclazier's positive comments to Dara that directly contradict Colclazier's alleged concerns.  (*Id.* at 379-381.)

- Superintendent Pritchard's testimony that there were no complaints whatsoever about Dara or her program. (*Id.* at 238-241.)

- Principal Osborn's testimony that Dara was a good teacher, had no performance issues, and that there were no complaints. (*Id.* at 463-468, 470-471.)

- Dara's testimony that there were no complaints at any point during the school year. (*Id.* at 379-381.)

- Board member Colclazier's inability to identify any of the parties who allegedly complained about Dara. (*Id.* at 312.)

- Cadenhead's, Colclazier's, and Upton's bad faith, secretive discussions regarding the vote to nonrenew Dara outside of the board meeting, which exceed the scope of their duties. (*Id.* at 234-235.)

- Cadenhead's, Colclazier's, and Upton's refusal to give any grounds for Dara's nonrenewal at the board meeting. (*Id.*, Vol. I, at 188; *id.*, Vol. II, at 238.)

- The testimony of the remaining two board members, Cai Levy and Claudia Willis, that Dara's speech was the reason the other three board members nonrenewed her. (Aplt. App., Vol. III, at 572, 580-581.)

- Colclazier's assertion that she didn't know how Dara felt about the bond, even though Dara testified at a prior board hearing in front of Colclazier about her support of the bond and the fact that Colclazier followed Dara's Facebook postings and responded to them. (*Id.*, Vol. II, at 299; *id.*, Vol. III, at 580-581.)

- The testimony of Superintendent Pritchard that Dara's speech was likely the reason the three board members nonrenewed her. (*Id.*, Vol. II, at 239-241.)

- The testimony of Superintendent Pritchard and Principal Osborn that there was no reason for the board's nonrenewal, other than retaliation for Dara's stance on the bond issue. (*Id*. at 239-41, 463-68, 470-471.)

Under the applicable legal standards, allegations and evidence must be viewed in the light most favorable to Dara. However, the district court took the opposite approach and not only made credibility assessments in favor of the Defendants without ever hearing testimony, but erred by viewing factual inferences from the record in the light most favorable to the Defendants. The district court listed facts that are very much disputed as "undisputed" in its order and recognized as valid the board members' assertions regarding both the receipt and accuracy of complaints about Dara, despite Dara's evidence to the contrary. (Aplt. App., Vol. III, at 604-605, 608.)   In addition, in its final order, the district court went so far as to apply the Defendant Board Members' allegations regarding Kena's tardiness and performance to Dara, which was clearly erroneous. (*Id*. at 612.)

Furthermore, the court erred in ruling that Dara's right to speak on the school finance issue of the bond was not clearly established. (*Id*. at 609.)  Like the teacher in *Pickering*, Dara spoke out about a school finance issue and lost her job as a result. The facts of the *Pickering* decision are analogous to those faced by Dara, and it is beyond dispute

that *Pickering* constitutes clearly established law with respect to a teacher's right to speak on issues of school finance. *Considine v. Board of County Com'rs of County of Adams, State of Colo.,* 910 F.2d 695, 702 (10th Cir. 1990). This should be especially evident to Defendant Board Members Colclazier and Cadenhead, both of whom are attorneys who have previously represented school districts. (*Id.*, Vol. II, at 291, 412.)

The district court erred when it failed to recognize that Dara has proffered sufficient evidence from which a reasonable jury could conclude that her speech was a substantial or motivating factor behind her nonrenewal. Furthermore, given the evidence set forth by Dara, a reasonable jury could conclude that the board has not demonstrated that Dara would have been nonrenewed absent her speech. Finally, Dara's speech on an issue of school finance is almost identical to the speech of the teacher in *Pickering*, which constitutes clearly established law, and the district court erred in holding otherwise.

**IV.  The district court erred in concluding that Kena had not established a *prima facie* case for FMLA retaliation where evidence clearly showed board members removed Kena from the rehire list because she used intermittent leave in the mornings.**

The Court reviews the district court's grant of Defendants' summary judgment motion on Kena's FMLA retaliation claim novo and

views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in her favor. *See Rife* at 1123–24 and *Bohn* at 1460. To state a *prima facie* case of retaliation under the FMLA, Kena must demonstrate that: "(1) [s]he availed h[er]self of a protected right under the FMLA, (2) an employment decision adversely affected h[er], and (3) a causal connection between the two actions exists." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1325 (10th Cir. 1997).  When evaluating a retaliation claim under the FMLA, the court must first determine whether the plaintiff has presented direct evidence of retaliatory intent. *Morgan,* 108 F.3d at 1323 n.3. If no direct evidence of retaliatory intent is presented, the court must apply the burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973). *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 208-209 (10th Cir.1997). Under the *McDonnell Douglas* framework, Defendants have an opportunity to rebut a *prima facie* case of retaliation by offering legitimate, nonretaliatory reasons for the adverse action. *Id.* Once Defendants proffer such reasons, Teachers must present evidence that Defendants' reasons are unworthy of belief, or are pretextual.

Employers are liable not only for retaliating against an employee who has specifically invoked the FMLA but also for punishing an

employee who took leave protected by the FMLA even if neither employee nor employer actually knew that the FMLA was involved. *See Dotson* v. *Pfizer, Inc.*, 558 F.3d 284, 295 (4th Cir. 2009) ("employees do not need to invoke the FMLA in order to benefit from its protections"); *Bachelder* v. *Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001) ("Whether either [employer] or [employee] believed at the time that her ... absences were protected by the FMLA is immaterial, however, because the company's liability does not depend on its subjective belief concerning whether the leave was protected."); *Byrne* v. *Avon Products, Inc.*, 328 F.3d 379, 382 (7th Cir. 2003) ("It is enough under the FMLA if the employer knows of the employee's need for leave; the employee need not mention the statute or demand its benefits.").  Notice can be provided in the form of a visibly serious medical condition, *Byrne*, 328 F.3d at 381-382, or through communications sufficient to make a reasonable employer inquire further to determine whether the absences were likely to qualify for FMLA protection, *Bachelder*, 259 F.3d at 1131. In the present case, notice was given to Principal Cheatwood, a speaking agent of the District.

      Contrary to the district court's ruling, Kena demonstrates a *prima facie* case of retaliation.  With respect to the first two prongs, the district

court correctly ruled that Kena proffered sufficient evidence that she both availed herself of a right protected under the FMLA and that an employment decision adversely affected her. (Aplt. App., Vol. III, at 610.) However, the district court incorrectly disregarded Kena's direct and indirect evidence of intentional discrimination and causal connection. (*Id*.)

First, with respect to the District, it is unquestioned that Principal Cheatwood was both an administrator and representative of the district and that she was both fully aware of, and consented to, Kena's intermittent leave. (*Id*., Vol. I, at 167-170.)  It is also undisputed that the District's standard policy and practice was that building level administrators would deal with FMLA issues directly at the building level. (*Id*., Vol. II, at 244.)  The District, as a defendant in this matter, is therefore liable for the actions of its board.

As to the individual Defendant Board Members, the sole reason board member Colclazier articulated to Superintendent Pritchard for nonrenewing Kena in her June 4, 2015 phone call prior to the board meeting was that Kena was coming in late in the mornings, which is a direct reference to Kena's intermittent leave. (*Id*., Vol. II, at 296, 322, 431-432.)  In their depositions, the Defendant Board Members confirmed they were fully aware of the relevant protected conduct of Kena, i.e. that

she took intermittent leave in the mornings, and cited her being late or tardy as the reason for their action.  (Aplt. App., Vol. II, at 296, 322, 431-432.)  Furthermore, Kena exercised her right to intermittent leave through the end of the school year, in temporal proximity to her nonrenewal.  (*Id.*, Vol. I, at 168.)

To the extent the individual Defendant Board Members assert ignorance of the law or facts as a defense, the Teachers' evidence shows such ignorance was intentional.  More specifically, Kena has offered evidence that the three board members acted in bad faith and outside the scope of their duties, intentionally ignoring the very administrators who had direct knowledge of her work and leave, refused to disclose their rational to the remaining board members, and provided no opportunity for anyone with direct knowledge to counter their undisclosed motives.  (*Id.*, Vol. II, at 275, 316-317, 345-347, 350, 420-421, 440; *id.*, Vol. III, at 576-577, 585.)  Unlike a "cat's paw" theory of liability where an employer can be imputed with the knowledge of the intentionally discriminatory acts of a supervisor,[7] the Defendant Board Members defense involves an intentionally "severed paw," where they deliberately insulated themselves from, and refused to interact with, the

---

[7] See *EEOC v. BCI Coca–Cola Bottling Co. of L.A.,* 450 F.3d 476, 487–88 (10th Cir. 2006).

very parties charged with supervising, evaluating, and accommodating Kena, all while exceeding the scope of their authority by conducting their own independent investigation, *questioning everyone except* the principal, superintendent, and Kena.

A "deliberate effort to avoid guilty knowledge is all the guilty knowledge the law requires." *United States v. Giovannetti,* 919 F.2d 1223, 1228 (7th Cir. 1990). *See also United States v. Jewell,* 532 F.2d 697, 700 (9th Cir. 1976), *cert. denied*, 426 U.S. 951 (1976) ("[D]eliberate ignorance and positive knowledge are equally culpable"). In the context of the Americans with Disabilities Act, courts have recognized that this type of deliberate ignorance does not insulate an employer from liability. *Hedberg v. Indiana Bell Telephone Company, Inc.,* 47 F.3d 928, 934 (7th Cir. 1995). Criminal courts, with an even higher standard of proof for intent than is required in the present context, have similarly recognized that intentional ignorance and actual knowledge are equally culpable under the law. *See United States v. Stadtmauer,* 620 F.3d 238, 255 (3rd Cir. 2010) and *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir. 1994). Kena contends the same standard applies to any alleged ignorance in the present case and that she has supplied sufficient evidence from which a reasonable jury could conclude that any alleged

ignorance on the part of the Defendant Board Members was both in bad faith and intentional, at least with respect to her FMLA claims.

Furthermore, contrary to the district court's ruling, the Defendants failed to present sufficient legitimate, non-retaliatory reasons for nonrenewal, as each Defendant Board Member expressly admitted in their depositions that their vote was based on rumors that Kena came to school late and it is uncontested that she came to school late exercising her intermittent leave rights under the FMLA. Kena also offered evidence through the testimony of Principal Cheatwood that any other reasons proffered by the board members were both pretextual and utterly false. Specifically, none of the alleged reasons were offered in Colclazier's June 4 phone call to Superintendent Pritchard and no reasons were given at the board meeting, indicating that she made them up after the fact. Additionally, Principal Cheatwood testified that Kena was an excellent teacher, that there were no complaints, and that she had no performance problems—directly contradicting the board members who admitted they never observed Kena, who based all statements on hearsay, and one of whom had an undisclosed conflict of interest and was acting as the attorney for a fellow teacher who wanted Kena removed. (Aplt. App., Vol. II, at 266-270.)

Additionally, Kena has offered evidence showing the alleged nondiscriminatory rationale alleged by Defendant Board Members, allegedly leaving students and an alleged lack of lesson plans, was nothing but a false, post-hoc, self-serving rationalization meant to avoid liability.  This rationale was developed and gathered while board members were acting outside the scope of their employment, showing bad faith.  None of the alleged nondiscriminatory reasons were cited in Colclazier's first call to Superintendent Pritchard and were instead first offered long after the vote during the depositions in this case. (Aplt. App., Vol. II, at 230.)  Similarly, the Defendant Board Members gave no rationale whatsoever at the time of the vote.  Whether the Defendants' post-hoc justification is sufficient is a question of fact for the jury and an issue which is both highly contested and suspect. *Tyler v. Re/Max Mountain States, Inc.,* 232 F.3d 808, 813 (10th Cir.2000) ("We are disquieted ... by an employer who 'fully' articulates its reasons for the first time months after the decision was made.").  Additionally, those allegations are directly contradicted by the testimony of Kena's principal who stated that Kena had no performance problems. (*Id*. at 266-267.) The Defendant Board Members' hearsay based testimony is not credible, it is based largely on information Cadenhead gathered while acting in bad faith and outside the scope of his role as a board member in the

course of representing Kena's fellow teacher against her, and it directly contradicts the testimony Kena's principal, who was the only party who directly observed Kena's teaching.  The district court erred in viewing this evidence in the light most favorable to the Defendants.

Additionally, general immunity does not shield the individual government representative from liability for violations of the FMLA. *Cornforth v. University of Oklahoma Bd. Of Regents*, 263 F. 3d 1129, 1133 (10th Cir. 2001) (Supervisor sued individually for FMLA violations was not entitled to immunity) and *Gray v. Baker*, 399 F. 3d 1241 (10th Cir. 2005) (Holding that individual officials immunity to employee's FMLA claim requires showing of good faith).  *See also Modica v. Taylor,* 465 F.3d 174, 186 (5th Cir. 2006) (holding that public employees may be held individually liable under FMLA) and *Darby v. Bratch,* 287 F.3d 673, 681 (8th Cir. 2002).   Further contrary to the district court's ruling, even qualified immunity shields government officials from liability for damages only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  With respect to the statutory claim at issue, "The Family and Medical Leave Act creates clearly established statutory rights, including the right to be free of discrimination or retaliation on account of one's

exercise of leave rights granted by the statute." *Darby v. Bratch*, 287 F. 3d 673 (8th Cir. 2002). *See also Gray v. Baker, supra.* The conduct of the board members violates Kena's clearly established right to FMLA leave, and immunity does not shield them from liability.

The district court erred when it failed to recognize Kena has stated a *prima facie* case for FMLA retaliation against both the District and the individual Defendant Board Members. Additionally, Defendants have not met the standard necessary to establish a legitimate, non-retaliatory reason for their action, as a reasonable jury could conclude that the alleged rationale was pretextual based on the evidence presented by Kena. Finally, the individual Defendant Board Members are not entitled to immunity for Kena's claims, as the FMLA constitutes clearly established law with respect to an employee's right to take approved intermittent leave.

## Conclusion and Request for Relief

The Teachers' positive evaluations, their contractual rights, and their constitutional rights were ignored by the Defendant Board Members whose actions were both retaliatory and outside the scope of their authority.  In ruling on the Teachers' claims, the district court viewed factual inferences from the record in the light most favorable to the District and Defendant Board Members, disregarded the Teachers' allegations and evidence, and failed to address the Teachers' claims under the negotiated agreement and the Oklahoma Constitution.

The Teachers ask this court to directly address each of their claims, including those premised on violations of the negotiated agreement and the Oklahoma Constitution.  The Teachers also ask the court to review the factual allegations and inferences taken from the record in the light most favorable to them when analyzing the rulings of the district court.

The Teachers respectfully request that this Court reverse the district court's original order of dismissal, reverse the district court's denial of Teachers' request for leave to amend, reverse the district court's summary-judgment order, and reverse the final order of the district court, remanding the case to the district court.

April 26, 2017                          Respectfully submitted,


                                        /s/Heath Merchen
                                        Heath Merchen
                                        323 East Madison
                                        Oklahoma City, Oklahoma 73154
                                        Telephone: (405) 523-4345
                                        Facsimile: (405) 523-4392
                                        hmerchen@okea.org

                                        *Attorney for Appellants, Kena Utter,*
                                        *Aubree Holsapple, and Dara*
                                        *Campbell*

## Statement of Counsel as to Oral Argument

Counsel believes that oral argument might assist the Court in analyzing the record in the context of Teachers' constitutional, statutory, and contractual claims.

/s/Heath Merchen
Heath Merchen

## Certificate of Compliance with Rule 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 12,749 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows in 13-point Century Schoolbook style.

/s/Heath Merchen
Heath Merchen

**Certificate of Digital Submission
and Privacy Redactions**

I hereby certify that the foregoing Appellant's Opening Brief, as submitted in Digital Form via the Court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the most recent version of Windows Defender, a commercial virus-scanning program that is updated daily, and, according to the program, is free of viruses. In addition, I certify that all required privacy redactions have been made.

/s/Heath Merchen
Heath Merchen

## Certificate of Service

I hereby certify that on this 26th day of April 2017, I electronically transmitted the foregoing Appellant's Opening Brief to the Clerk of Court using the ECF system. Based on the Electronic Records currently on file, the Clerk of Court will transmit a Notice of Docket Activity and electronic copy of this brief to the following ECF registrants:

Laura Holmes
LHolmes@cfel.com

Laura Holmgren-Ganz
LGanz@cfel.com

*Attorneys for Appellees*

I further certify that on this 26th day of April, 2017, seven (7) copies of the foregoing Appellant's Opening Brief were dispatched to Federal Express for delivery within two (2) business days to:

Ms. Elisabeth A. Shumaker
Clerk of Court
United States Court of Appeals for the Tenth Circuit
Byron White United States Courthouse
1823 Stout Street
Denver, CO 80257

/s/Heath Merchen
Heath Merchen

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  KENA UTTER,<br>2.  AUBREE HOLSAPPLE, and<br>3.  DARA CAMPBELL,<br><br>        Plaintiffs,<br><br>        v.<br><br>1.  AMIE COLCLAZIER,<br>2.  JACK CADENHEAD,<br>3.  MICKEY UPTON, and<br>4.  INDEPENDENT<br>SCHOOL DISTRICT NO. I-01 OF<br>SEMINOLE COUNTY, STATE OF<br>OKLAHOMA, a/k/a SEMINOLE SCHOOL<br>DISTRICT,<br><br>        Defendants. | Case No. CIV-16-182-RAW |

## <u>ORDER</u>

Plaintiffs filed this action on April 19, 2016 in the District Court of Seminole County

Oklahoma against the Seminole School District and three individual board members.

Defendants removed this action to this court on May 13, 2016.  Now before the court is

Defendants' motion to dismiss counts 1, 2, 4 and 5 of Plaintiffs' eight claims [Docket No. 5].

Additionally, Defendants request that the § 1983 claims against the individual defendant board

members in their official capacity be dismissed.  Claims brought against a state official in his or

her official capacity are construed as claims against the State and are barred by the Eleventh

Attachment A - Page 1

Amendment.[1]  The court therefore dismisses the § 1983 claims against the individual board members in their official capacities.

The following claims are at issue herein: (Count 1) breach of contract against the School District; (Count 2) violation of Oklahoma's Teacher Due Process Act, 70 OKLA. STAT. §§ 6-101.20 *et seq*. (hereinafter "TDPA") against the School District; (Count 4) § 1983 violation of due process rights in liberty interests against all Defendants; and (Count 5) § 1983 and Oklahoma Constitutional violation of due process rights in property interests against all Defendants.

***STANDARD OF REVIEW***

For purposes of the motions to dismiss, the court accepts as true all of the factual allegations in Plaintiffs' Amended Petition and construes those facts in the light most favorable to Plaintiffs.  See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1284 (10th Cir. 2008).  Of course, the court does not accept as true conclusory statements or legal conclusions.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To survive the motions to dismiss, the Amended Petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plaintiffs must nudge their "claims across the line from conceivable to plausible."  Twombly,

---

[1] Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); Griess v. Colorado, 841 F.2d 1042, 1045 (10th Cir. 1988).

Attachment A - Page 2

550 U.S. at 570.  The plausibility standard requires "more than a sheer possibility that a

defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.  "Where a complaint pleads facts that

are merely consistent with a defendant's liability, it stops short of the line between possibility

and plausibility of entitlement to relief."  Id. (quoting Twombly, 550 U.S. at 557) (internal

quotations omitted).  In other words, the well-pleaded facts must "permit the court to infer more

than the mere possibility of misconduct."  Id. at 679.

> [T]he Twombly / Iqbal standard is a middle ground between heightened fact pleading,
> which is expressly rejected, and allowing complaints that are no more than labels and
> conclusions or a formulaic recitation of the elements of a cause of action, which the Court
> stated will not do.  In other words, Rule 8(a)(2) still lives.  Under Rule 8, specific facts
> are not necessary; the statement need only give the defendant fair notice of what the
> claim is and the grounds upon which it rests.

Burnett v. Mortgage Elec. Registration Sys., Inc., 706 F.3d 1231, 1235-36 (10th Cir. 2013)

(quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012)).

In a case against multiple defendants, "it is particularly important . . . that the complaint

make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with

fair notice as to the basis of the claims against him or her, as distinguished from collective

allegations . . . ."  Robbins v. Oklahoma, 519 F.3d 1242, 1247, 1248 (10th Cir. 2008) (emphasis

in original).  Otherwise, the Complaint would fail to provide fair notice and to present a plausible

right to relief.


### *ALLEGATIONS*

Plaintiffs were employed by the School District for the 2014 – 2015 school year on

temporary contracts.  Docket No. 3, Exh 3, p. 2.  At the June 11, 2015 board meeting, the three

individual board member defendants voted to not renew Plaintiffs' contracts.  Id. p. 12-13.

Plaintiffs' contracts were not renewed.  Id.  Following the board meeting, one or more of the

Attachment A - Page 3

individual board member defendants stated to third parties that "they had good reason" for terminating[2] Plaintiffs and that the Plaintiffs "were not effective at their jobs."  Id. at 14.

## ANALYSIS

### Oklahoma Teacher Due Process Act

Plaintiffs claim that the School District failed to comply with the TPDA by failing to: (1) initiate a hearing for nonrenewal; (2) receive a recommendation to dismiss and to mail Plaintiffs a copy thereof; (3) provide notice of underlying facts; (4) provide written admonishment; (5) provide the statutorily required pre-termination hearing; and (6) provide a name-clearing hearing when Plaintiffs' contracts were not renewed for performance related reasons.  The TPDA provides in pertinent part:

> A. The dismissal, suspension and nonreemployment provisions of the Teacher Due Process Act of 1990 *shall not apply* to:
> 1. Substitute teachers;
> 2. Adult education teachers; and
> 3. Teachers who are employed on temporary contracts.

70 OKLA. STAT. § 6-101.23 (emphasis added).  As Plaintiffs alleged, they were employed on temporary contracts.  The nonreemployment provisions of the TPDA do not apply to them.  Accordingly, this claim is dismissed.

### Breach of Contract

Plaintiffs claim that the School District breached their contracts by failing to renew them, arguing that the collective bargaining agreement provided for compliance with the TPDA.  As

---

[2] Throughout the Amended Petition, Plaintiffs refer to Defendants "terminating and/or nonrenewing" their temporary contracts.  Plaintiffs were not "terminated" mid-contract.  Their temporary contracts were completed, and then Defendants chose not to offer them new contracts, temporary or otherwise.

Attachment A - Page 4

the court held above, the School District did not violate the TPDA.  Moreover, an Oklahoma

teacher on a temporary contract has no expectation of a continuing contract status.  See DeHart

v. Independent Sch. Dist. No. 1 of Tulsa Cnty., 259 P.3d 877 (Okla. Civ. App.) (reviewing the

issue of whether a teacher's contract was actually temporary or whether the school district had

created a regular continuing contract of employment); see also Scheer v. Independent Sch. Dist.

No. 1-26 of Ottowa Cnty., 948 P.2d 275, 278 (Okla. 1997) ("There is no legally protectable

interest in tenure after two years.").

There is no allegation here that the School District had somehow created regular

continuing contracts with any of the Plaintiffs.  Plaintiffs acknowledge that they held temporary

contracts.  Instead they argue that in deciding to not renew Plaintiffs' temporary contracts, the

School District did not comply with the collective bargaining agreement which required

compliance with the TPDA.  The court does not agree.  The School District did not violate the

TPDA in the nonrenewal of Plaintiffs' contracts.  The breach of contract claim is dismissed.


**Due Process Rights in Property Interests**

Plaintiffs claim that the School District and the individual board member defendants

violated their Fourteenth Amendment and Oklahoma Constitutional rights to due process,

arguing that they have a property interest in their continued employment.  Property interests are

not created by the Constitution, but rather "by independent sources such as a state or federal

statute, a municipal charter or ordinance, or an implied or express contract."  Teigen v. Renfrow,

511 F.3d 1072, 1078-79 (10th Cir. 2007) (citation omitted).  As the court held above, Plaintiffs

did not have a property interest in renewal of their temporary contracts.  Accordingly, this claim

is also dismissed.

Attachment A - Page 5

**Due Process Liberty Interests**

Plaintiffs also claim that the School District and the individual board member defendants violated their Fourteenth Amendment due process rights and liberty interests when one or more of the individual board member defendants stated to third parties that "they had good reason" for terminating Plaintiffs and that the Plaintiffs "were not effective at their jobs."  This claim fails for two reasons.  First, Plaintiffs fail to make clear exactly *who* did *what* to *whom* in accordance with Twombly and Iqbal.  Plaintiffs do not state which individual board member defendant made these statements.  The Amended Petition, therefore, fails to provide the individual defendants with fair notice and to present a plausible right to relief.

Second, these statements – that the board members "had good reason" not to renew Plaintiffs' contracts or that Plaintiffs "were not effective at their jobs" – are not, as Plaintiffs argue, actionable under the "reputation-plus" theory,[3] as they do not amount to charges that might seriously damage Plaintiffs' standing and associations in the community.  See Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972); Hadley v. Moon, 38 F.3d 1220 (10th Cir. 1994) (recognizing that damage to one's reputation plus termination violates an employee's due process rights).  Reasons that pertain solely to a plaintiff's job performance do not satisfy this test because "dismissal for unsatisfactory job performance . . . does not carry with it the sort of opprobrium sufficient to constitute a deprivation of liberty."  McGinnis v. District of Columbia, 65 F.Supp.3d 203, 220 (D.D.C. 2014) (internal quotations and citation omitted).  This claim is dismissed.

---

[3] Plaintiff concedes that this claim fails under the "stigma theory," but argues that it survives under the less stringent "reputation-plus" theory.

Attachment A - Page 6

*CONCLUSION*

For the reasons stated herein, Defendants' partial motion to dismiss [Docket No. 5] is hereby GRANTED.  Counts 1, 2, 4 and 5 are hereby dismissed.  Additionally, the § 1983 claims against the individual board members in their official capacities are dismissed.  Counts 3, 6, 7 and 8 remain.

**IT IS SO ORDERED** this 27th day of October, 2016.

_____

**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**

Attachment A - Page 7

# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  KENA UTTER, <br> 2.  AUBREE HOLSAPPLE, and <br> 3.  DARA CAMPBELL, <br><br>     Plaintiffs, <br><br>     v. <br><br> 1.  AMIE COLCLAZIER, <br> 2.  JACK CADENHEAD, <br> 3.  MICKEY UPTON, and <br> 4.  INDEPENDENT <br> SCHOOL DISTRICT NO. I-01 OF <br> SEMINOLE COUNTY, STATE OF <br> OKLAHOMA, a/k/a SEMINOLE SCHOOL <br> DISTRICT, <br><br>     Defendants. | Case No. CIV-16-182-RAW |

## <u>ORDER</u>

Before the court are Plaintiffs' motion for reconsideration and clarification of the court's order of dismissal [Docket No. 25] and motion to amend [Docket No. 40]. On October 27, 2016, the court entered an Order granting Defendants' *partial* motion to dismiss. The court emphasizes the word "partial" because in both motions now before the court Plaintiffs argue that the court did not address all of their claims in its October 27, 2016 Order. In ruling on a partial motion to dismiss, the court addresses only the claims at issue. For instance, the court dismissed the claims against the individual defendants in their official capacities. The issue of their individual capacities was not at issue and thus remained.

The court understands that Plaintiffs are also attempting to revive their contract claims, by breaking them down into multiple claims based on the alleged breach. This attempt is futile.

Attachment B - Page 1

As the court previously held, an Oklahoma teacher on a temporary contract[1] has no expectation

of a continuing contract status.  See DeHart v. Independent Sch. Dist. No. 1 of Tulsa Cnty., 259

P.3d 877 (Okla. Civ. App. 2011).  Plaintiffs argue that the Seminole School District had an

unwritten policy and practice of rehiring teachers who had recommendations from their principal

and superintendent.

In effect, Plaintiffs argue that after one year of temporary employment, the Board had no

choice but to rehire them based upon those recommendations, thus negating the Board's hiring

role entirely and transforming Plaintiffs into permanent contractual employees.  It is not

plausible[2] that the School District negated its entire written policy and process for hiring with an

unwritten practice.  Moreover, the evidence listed in Plaintiffs' motion to amend shows simply

that temporary teachers are generally rehired with those recommendations.  It does not show that

the written hiring policy was replaced with an unwritten policy that any temporary teacher who

receives those recommendations is immediately transformed into a permanent contractual

employee.  The court affirms its prior ruling dismissing the contract claims.

In their request to amend, Plaintiffs argue that at the time of the original motion to

dismiss, no discovery had yet occurred.  This is the usual practice; thus, the different standards

on motions to dismiss and motions for summary judgment.  Nevertheless, Plaintiffs argue that

evidence gathered through discovery supports new and previously dismissed claims.  Plaintiffs

attach their proposed "Second Amended [Complaint]" and list this new evidence.  The facts

listed do not create new causes of action, but are simply details supportive or not of claims

already made.

_____

[1] Plaintiffs were no longer even on a temporary contract.  Their contracts had expired.  The
Board simply voted to not rehire them.
[2] Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

2

Attachment B - Page 2

These facts also are not sufficient to revive any previously dismissed claims.  As held above, they are not sufficient to revive the breach of contract claims.  They also do not revive Plaintiffs' claim for violation of due process rights in liberty interests.  First, this is only evidence of things said *to*, not *by* the individual defendants.[3]  Additionally, as the court previously ruled, reasons that pertain solely to a plaintiff's job performance do not violate her rights because "dismissal for unsatisfactory job performance . . . does not carry with it the sort of opprobrium sufficient to constitute a deprivation of liberty."  McGinnis v. District of Columbia, 65 F.Supp.3d 203, 220 (D.D.C. 2014) (internal quotations and citation omitted).

Accordingly, the motion for reconsideration and clarification of the court's order of dismissal [Docket No. 25] and the motion to amend [Docket No. 40] are hereby DENIED.

**IT IS SO ORDERED** this 13th day of December, 2016.

_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**

---

[3] Docket No. 40, p. 5, ¶ 3.

3

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  KENA UTTER,<br>2.  AUBREE HOLSAPPLE, and<br>3.  DARA CAMPBELL,<br><br>Plaintiffs,<br><br>v.<br><br>1.  AMIE COLCLAZIER,<br>2.  JACK CADENHEAD,<br>3.  MICKEY UPTON, and<br>4.  INDEPENDENT<br>SCHOOL DISTRICT NO. I-01 OF<br>SEMINOLE COUNTY, STATE OF<br>OKLAHOMA, a/k/a SEMINOLE SCHOOL<br>DISTRICT,<br><br>Defendants. | Case No. CIV-16-182-RAW |

## ORDER

Before the court is Defendants' motion for summary judgment [Docket No. 26] as to all

remaining claims.  After the court's October 27, 2016 Order granting Defendants' partial motion

to dismiss, the remaining claims are as follows: (1) claim by all Plaintiffs against all Defendants

for violation of the Open Meeting Act, 25 OKLA. STAT. § 303, *et seq.* (hereinafter "OMA"); (2)

claim by all Plaintiffs against the individual Board Members for intentional interference with

prospective business interests; (3) § 1983 claim by Dara Campbell against all Defendants for

violation of her First Amendment rights; and (4) § 1983 claim by Kena Utter against all

Defendants for violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (hereinafter

"FMLA").  The § 1983 claims against the individual Board Member defendants are in their

individual capacities only.  They assert qualified immunity as to those claims.


## SUMMARY JUDGMENT AND QUALIFIED IMMUNITY

Summary judgment will be granted if there is no genuine issue as to any material fact and

the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The court's function

is not "to weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In

applying the summary judgment standard, the court views the evidence and draws reasonable

inferences therefrom in the light most favorable to the nonmoving party.  Burke v. Utah Transit

Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006).  At this stage, however, Plaintiffs may

not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts

in support of their Amended Petition.  Id.

When a defendant raises a qualified immunity defense in response to a motion to dismiss

or a motion for summary judgment,[1] the burden shifts to the plaintiff and the court employs a

two-part test.  Morris v. Noe, 672 F.3d 1185, 1191 (10th Cir. 2012); Brown v. Montoya, 662

F.3d 1152, 1164 (10th Cir. 2011).  A plaintiff must show that: (1) the defendant violated a

constitutional right, and (2) the constitutional right was clearly established at the time of the

defendant's alleged misconduct.[2]  Id.  A plaintiff must establish both prongs to defeat a qualified

immunity defense.  Id.  The court has discretion to decide which of the two prongs to address

---

[1] "The legally relevant factors for a qualified immunity decision will be different at the summary judgment state – no longer can the plaintiffs rest on facts as alleged in the pleadings." Stonecipher v. Valles, 759 F.3d 1134, 1148, n.9 (10th Cir. 2014).

[2] The court is not to "define clearly established law at a high level of generality."  City and Cnty. of San Francisco, Calif. v. Sheehan, 135 S.Ct. 1765, 1775-76 (2015).

Attachment C - Page 2

first in light of the circumstances of the case. <u>Brown</u>, 662 F.3d at 1164. Only if a plaintiff first meets this two-part test does the defendant bear the traditional summary judgment burden to show that there are no genuine disputes of material fact and that she is entitled to summary judgment as a matter of law. <u>Kock v. City of Del City</u>, 660 F.3d 1228, 1238 (10th Cir. 2011).

## <u>UNDISPUTED MATERIAL FACTS</u>

The Seminole School District (hereinafter "School District") is a political subdivision of the State of Oklahoma. The individual defendants, Ms. Colclazier, Mr. Cadenhead and Mr. Upton, were Board Members during the 2014 – 2015 school year. Plaintiffs, Ms. Utter, Ms. Holsapple and Ms. Campbell, were temporary teachers during the 2014 – 2015 school year.

The individual defendants testified that over the course of the school year, they received several complaints about Plaintiffs. Plaintiffs argue that the individual defendants did not voice any complaints to the superintendent until shortly before the June 11, 2015 Board meeting.

- The complaints about Ms. Utter included frequent tardiness, leaving students without instruction and failing to have lesson plans prepared for substitute teachers for her frequent times away from class. Plaintiff Utter argues that she was not late "every day."

- The complaints about Ms. Holsapple included failure to give notice on a third grade reading test causing children not to progress to the fourth grade, an insensitive attitude, an inability to work with special needs students and online shopping during work hours. Ms. Holsapple argues that she had no responsibility for making substantive special education decisions, testing or student placement. Plaintiff Holsapple also points out that Defendant Upton stated he voted against rehiring Ms. Holsapple because he did not believe she had the proper certification.

Attachment C - Page 3

- The complaints about Ms. Campbell included disorganization, being unsupportive of FFA and 4H programs and showing animals and negative Facebook postings about being a Seminole Vocational-Agriculture teacher.  Ms. Campbell argues that the only comments the individual defendants made regarding Ms. Campbell's work performance were positive, save for the calls to the superintendent directly before the June 11, 2015 Board meeting.

Ms. Utter's principal agreed that she could come to school late on mornings that her autistic son had morning meltdowns.  The School District's normal mode of handling FMLA requests was for the site supervisor to directly and informally handle them.  Her son's morning meltdowns averaged between 20-30 minutes to a maximum of one hour.  She never took a full day off from work to deal with her son's meltdowns.  The individual defendants were unaware of the agreement between Ms. Utter and the principal.  As noted above, however, they had heard complaints of her frequent tardiness.

On December 17, 2014, at a special meeting the Board called for a bond issue to build a new high school in a different location than the existing site.  An election on the proposed bond was held on March 3, 2015.  The bond issue did not pass.  Ms. Campbell posted a "Vote Yes" sign on the school bond issue in her yard and made similar postings on Facebook.  Mr. Cadenhead tried to convince Ms. Campbell's not to support it.

Plaintiffs each received evaluations from their principals for the 2014 – 2015 school year. Plaintiffs argue that the individual defendants disregarded the principals' evaluations and based their votes on hearsay.  Plaintiffs received their full salaries from the 2014 – 2015 school year.

The School District's policy makes the Board responsible "to apprise the general effectiveness of the schools."  Under the 2014 – 2015 Collective Bargaining Agreement with the

4

Seminole Teachers Association, teacher evaluations are a "mutual endeavor among all teachers, the administrative staff and the Board of Education to improve the quality of the education program."   Plaintiffs argue neither provision gives the Board Members the right to independently evaluate teachers.

On the Agenda for the June 11, 2015 Board meeting was the rehiring of teachers for the 2015 – 2016 school year.  According to the minutes of the June 11, 2015 meeting, two separate motions were made as to the rehiring of teachers for the 2015 – 2016 school year.  In the first motion, Mr. Cadenhead moved to rehire teachers for the 2015 – 2016 school year, excluding Plaintiffs.  The motion passed unanimously.  In the second motion, another board member moved to rehire Plaintiffs for the 2015 – 2016 school year.  The motion failed in a 3 – 2 vote, with the individual defendants voting "no."

Before the June 11, 2015 Board meeting, Ms. Colclazier contacted the superintendent and informed him she was the "swing vote" as to the Plaintiffs' rehire.  The superintendent also testified that before the Board meeting, Mr. Upton contacted him and stated that he was voting not to rehire teachers.  The superintendent asked if he was referring to the same teachers he had discussed with Mr. Cadenhead and Ms. Colclazier.  Mr. Upton responded that they were the same teachers.  Mr. Cadenhead testified that he discussed Plaintiffs with Mr. Upton possibly once and with Ms. Colclazier possibly at some point throughout the school year regarding complaints they received.  One of the people who complained to Mr. Cadenhead about Plaintiffs was a fellow teacher who was represented by Mr. Cadenhead on a separate matter.

Soon after the June 11, 2015 Board meeting, all Plaintiffs were hired at other schools.  Plaintiffs argue that their new jobs were not commensurate with their previous pay and were located significantly farther from their residences.

5

Attachment C - Page 5

## FEDERAL CLAIMS

### *§ 1983 Violation of First Amendment*

Plaintiff Campbell brings this claim against all Defendants. The court first analyzes whether she has established her claim. The individual defendants have raised the defense of qualified immunity. The court addresses this defense as to each individual defendant below.

Plaintiff Campbell seeks relief against Defendants for deprivation of her First Amendment rights. She alleges that the decision not to rehire her was in retaliation for her exercise of the right to freedom of speech under the First Amendment, specifically her speech regarding the school bond issue. The "First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern" and that "a public employer cannot retaliate against an employee for exercising [her] constitutionally protected right of free speech." Couch v. Board of Trustees of Memorial Hosp. of Carbon Cnty., 587 F.3d 1223, 1235 (10th Cir. 2009) (citing, *inter alia*, Garcetti v. Ceballos, 547 U.S. 410, 410 (2006) and Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)).

When such a claim is alleged, courts apply the Garcetti/Pickering test, which consists of the following five prongs:

> First, the court must determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision. Finally, if the employee establishes that his speech was such a factor, the employer may

Attachment C - Page 6

demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

Id. (citation omitted).

For purposes of the summary judgment motion, Defendants admit that Ms. Campbell's alleged speech regarding the school bond issue involved a matter of public concern.[3]  Defendants argue, however, that Ms. Campbell's claim cannot survive the Garcetti/Pickering analysis because she cannot establish that Defendants were motivated by her speech to take any adverse employment action.  To establish that her speech was a motivating factor in the Board's decision not to rehire her, Ms. Campbell must show that her "protected speech played a substantial part in the [Board's] decision."  Maestas v. Segura, 416 F.3d 1182, 1188 (10th Cir. 2005).  She "must produce evidence linking the [Board's] action to [her] speech."  Id.  "Speculation or hunches amidst rumor and innuendo will not suffice."  Id. at 1189.  She cannot sustain this burden "simply by showing that the elimination of the protected activity may have been welcomed by the defendants."  Id.

Plaintiff Campbell has not met her burden.  She has not established that her speech was a motivating factor in the Board's decision not to rehire her.  The Complaints the individual defendants heard about Ms. Campbell included that she was disorganized, that she was unsupportive of FFA and 4H programs and showing animals and that she made negative Facebook postings about being a Seminole Vocational-Agriculture teacher.  She has not argued that any Board Member other than Mr. Cadenhead disagreed with her stance on the bond issue.  She has shown that Mr. Cadenhead tried to change her mind on the issue and perhaps made her uncomfortable.  She has not shown, however, that her speech on that issue, an issue that was decided more than three months prior to the June 11, 2015 Board meeting, had *any* influence on

---

[3] Defendants do not specifically mention the first or third prong, but apparently admit those as well for purposes of the summary judgment motion.

Attachment C - Page 7

the Board's decision not to rehire her, much less on Mr. Cadenhead's vote.  She certainly has not

shown that her speech played a substantial part in the Board's decision, in Mr. Cadenhead's vote

or in any other Board member's vote including those of the other individual defendants.

Accordingly, she has failed to establish a claim for violation of her First Amendment rights.

Defendants' motion for summary judgment is granted as to this claim.

### *Qualified Immunity – Colclazier, Cadenhead and Upton*

The individual defendants have raised the defense of qualified immunity.  The burden

then shifts to Plaintiff Campbell to show that: (1) the defendant violated a constitutional right,

and (2) the constitutional right was clearly established at the time of the defendant's alleged

misconduct.  As the court held above, Ms. Campbell has not shown that any of the Defendants

violated a constitutional right.

Moreover, as to whether the alleged infringed right was clearly established, the court is

not to "define clearly established law at a high level of generality."  Sheehan, 135 S.Ct. at 1775-

76.  With regard to Mr. Cadenhead, Plaintiff Campbell has cited to no authority showing she has

a clearly established constitutional right that would prevent him from voting on whether to rehire

her after he disagreed with her on a bond issue.  With regard to Ms. Colclazier and Mr. Upton,

Ms. Campbell has cited no authority showing she has a clearly established right that would

prevent them from voting on whether to rehire her after a fellow board member disagreed with

her on a bond issue.  Plaintiff Campbell has not met her burden to show that any of the individual

defendants violated her clearly established constitutional rights. Accordingly, Mr. Cadenhead,

Ms. Colclazier and Mr. Upton are entitled to qualified immunity.

Attachment C - Page 8

### § 1983 Violation of FMLA

Plaintiff Utter brings this claim against all Defendants.  The court first analyzes whether she has established her claim.  The individual defendants have raised the defense of qualified immunity.  The court addresses this defense as to each individual defendant below.

In analyzing a claim of retaliation under the FMLA, the court utilizes the burden-shifting approach set out in McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973).  To establish her claim for retaliation under the FMLA, Ms. Utter must show that: "(1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions."  Morgan v. Hilti, Inc., 108 F.3d 1310, 1325 (10th Cir. 1997).  If she establishes a *prima facie* case, the burden then shifts to Defendants to show a legitimate nondiscriminatory reason for the adverse action.  Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1290 (10th Cir. 2007).  If Defendants meet this burden, the burden shifts back to Plaintiff to show the reason is pretextual.  Id.

Plaintiff has met the first prong.  She availed herself of a protected right under the FMLA.  As to the second prong, she was adversely affected by the decision not to rehire her.  As to the third prong, the individual defendants testified they decided not to rehire her based on complaints regarding her frequent tardiness, leaving students without instruction and failing to have lesson plans prepared for substitute teachers for her frequent times away from class.  It is uncontested that the Board Members were unaware of Ms. Utter's FMLA arrangement with her principal.  They had no retaliatory intent.  The Tenth Circuit has "characterized the showing required to satisfy the third prong under a retaliation theory to be a showing of *bad intent* or '*retaliatory motive*' on the part of the employer."  Id. at 1287 (emphasis added).  Plaintiff has not shown any bad intent or retaliatory motive by the School Board or any individual defendant and

9

thus has failed to meet the third prong.[4]  She failed to establish a *prima facie* claim of retaliation

under the FMLA.

Assuming, alternatively, that Ms. Utter has established a *prima facie* case based on the

fact that the fact the Board Members voted against rehiring her in part because of her tardiness

albeit without knowledge of her FMLA request, the burden then shifts to the Defendants to show

a legitimate nondiscriminatory reason for their decision.  Defendants have met this burden.  In

addition to her frequent tardiness, the individual defendants received complaints about Ms. Utter

often leaving her students without instruction and prepared lesson plans for the substitute

teachers.  In order to fulfill her job requirements, a teacher who knows she will be tardy or absent

often would need to be prepared in advance.  According to the complaints received by the

Defendants, she was not fulfilling her job requirements and her students suffered.  Defendants

had a legitimate nondiscriminatory reason for their decision not to rehire her.  Ms. Utter has not

shown that reason to be pretextual.  Defendants' motion for summary judgment is granted as to

this claim.

### *Qualified Immunity – Colclazier, Cadenhead and Upton*

The individual defendants have raised the defense of qualified immunity.  The burden

then shifts to Plaintiff Cambell to show that: (1) the defendant violated a constitutional right, and

(2) the constitutional right was clearly established at the time of the defendant's alleged

---

[4] Citing Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996 (8th Cir. 2012),
Plaintiff Utter argues that for a valid FMLA claim, she need not show any discriminatory intent.
Plaintiff is mistaken.  In describing different types of FMLA claims, the Eighth Circuit in
Pulczinski noted that discriminatory intent need not be established to prove an *interference
claim*.  Id. at 1005.  The Pulczinski court recognized that to prove a retaliation claim, a plaintiff
must show "that the employer was motivated by the employee's exercise of rights under the
FMLA."  Id. at 1006.

Attachment C - Page 10

misconduct.  As the court held above, Ms. Campbell has not shown that any of the Defendants violated a constitutional right.

Moreover, as to whether the alleged infringed right was clearly established, the court is not to "define clearly established law at a high level of generality."  Sheehan, 135 S.Ct. at 1775-76.  Each individual defendant was in the same position – they knew of complaints about Ms. Utter's frequent tardiness and her leaving her students without instruction or prepared lesson plans for the substitute teachers.  They did not know of her FMLA leave.  Ms. Campbell has cited to no authority showing she has a clearly established constitutional right that would prevent them from voting on whether to rehire her based on these facts.  Mr. Cadenhead, Ms. Colclazier and Mr. Upton are entitled to qualified immunity.

## STATE CLAIMS

As the court has granted summary judgment as to the remaining federal claims, the court declines to retain supplemental jurisdiction over the remaining state claims.  Accordingly, the OMA claim and the claim for intentional interference with prospective business interests are remanded to the District Court of Seminole County Oklahoma.

## CONCLUSION

The motion for summary judgment [Docket No. 26] is GRANTED IN PART.  The federal claims are dismissed against all Defendants.  The individual defendants are also entitled to qualified immunity on the § 1983 claims.  The state claims are remanded to the District Court for Seminole County, Oklahoma.  Defendants' motion to exclude Plaintiffs' witnesses or for extension of time [Docket No. 31] and motions in limine [Docket Nos. 32 and 37] are MOOT.

11

**IT IS SO ORDERED** this 15th day of December, 2016.

_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**

12

Attachment C - Page 12

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

1. KENA UTTER,
2. AUBREE HOLSAPPLE, and
3. DARA CAMPBELL,

     Plaintiffs,

     v.

1. AMIE COLCLAZIER,
2. JACK CADENHEAD,
3. MICKEY UPTON, and
4. INDEPENDENT
SCHOOL DISTRICT NO. I-01 OF
SEMINOLE COUNTY, STATE OF
OKLAHOMA, a/k/a SEMINOLE SCHOOL
DISTRICT,

     Defendants.

Case No. CIV-16-182-RAW

## JUDGMENT

In accordance with the Order entered contemporaneously herewith and pursuant to Rule 58 of the Federal Rules of Civil Procedure, the court hereby enters this Judgment for Defendants and against Plaintiff as to the federal claims.  The state claims are remanded to the District Court for Seminole County, Oklahoma.

IT IS SO ORDERED this 15th day of December, 2016.

_Ronald A. White_

_____
**HONORABLE RONALD A WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**

Attachment D - Page 1