**Appeal No. 17-7002**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

Kena Utter, Aubree Holsapple, and Dara Campbell**,**
Plaintiffs-Appellants,

v.

Amie Colclazier, Jack Cadenhead, Mickey Upton,
and Independent School District No. I-01 of Seminole County,
State of Oklahoma, a/k/a Seminole School District,
Defendants-appellees

---

Appeal from the United States District Court for the
Eastern District of Oklahoma
District Court Case No. CIV-16-00182-RAW
Honorable Ronald A. White

---

## APPELLEE'S RESPONSE BRIEF

---

Laura L. Holmes, OBA No. 14748
Laura Holmgren-Ganz, OBA No. 12342
900 N. Broadway, Suite 300
Oklahoma City, Oklahoma 73102
Telephone: (405) 528-2800
Facsimile:  (405) 528-5800
Counsel for Appellees

---

**ORAL ARGUMENT NOT REQUESTED**                    **May 26, 2017**

# Table of Contents

Table of Contents ................................................................................................. i

Table of Authorities ........................................................................................... iii

Statement of the Issues...................................................................................... 1

Statement of the Case and Statement of Facts ............................................. 2
    Procedural History ......................................................................................... 2
    Facts. ................................................................................................................ 7

Summary of the Argument............................................................................... 14

Argument.............................................................................................................. 18

       Standard of Review........................................................................... 18

    I:     The Court Did Not Err in Granting Defendants' Partial Motion to
           Dismiss, Denying Plaintiffs' Motion to Clarify, or Denying Plaintiffs'
           Motion to Amend as to Plaintiffs' Breach of Contract Claims ...........22

    II:    The Court Did Not Err in Concluding that Plaintiffs as Temporary
           Teachers Are Not Entitled to Due Process for Nonrenewal of Their
           Contracts ............................................................................................ 27

    III:   Defendants' Motion for Summary Judgment was Appropriately
           Granted .............................................................................................. 33

        A.    Campbell's Speech Was Not the Motivating Factor For Not
               Re-Hiring Her For the 2015-2016 School Year.......................33

        B.    Defendants' Decision Regarding Utter's Employment was
               Unrelated to Her FMLA Claim.................................................. 37

    IV:   The Court Properly Found That Individual Defendants Were Entitled
           to Qualified Immunity ....................................................................... 40

Conclusion ............................................................................................. 42

Certificate of Compliance. ..................................................................... 44

Certificate of Digital Submission............................................................ 44

Certificate of Service. ............................................................................ 45

## Table of Authorities

**Cases**

*A.M. v. Holmes,*
  830 F.3d 1123 (10th Cir. 2016)..................................................... 41

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................................... 21

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................ 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).......................... 18, 19

*Bishop v. Wood,*
  426 U.S. 341, 96 S.Ct. 207, 48 L.Ed.2d 684 (1976) ........................................ 30

*Board of Regents v. Roth,*
  408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972) ..................................... 30

*Bones v. Honeywell Intern., Inc.,*
  366 F.3d 869 (10th Cir. 2004)........................................................... 37

*Brammer- Hoelter v. Twin Peaks CharterAcad.*,
   492 F.3d 1192 (10th Cir. 2007).................................................. 33, 34

*Campbell v. Gambro Healthcare, Inc.,*
  478 F.3d 1282 (10th Cir. 2007)................................................... 17, 38

*Celotex Corp. v. Catrett,*
  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ..................................... 21

*Chase v. United State Postal Services,*
  843 F.3d 553 (1st Cir. 2016) ........................................................ 38

*Clark County Sch. Dist. v. Breeden,*
  532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ................................... 35

*Cohen v. Fred Meyer, Inc,*
  686 F.2d 793 .......................................................................... 39

*Cox v. Glanz,*
  800 F.3d 1231 (10th Cir. 2015)...................................................... 21

*DeHart v. Ind. Schl. Dist. No. 1 of Tulsa County,*
  259 P.3d 877, 2011 OK CIV APP 68....................................... 15, 30

*Dixon v. Kirkpatrick*,
  553 F.3d 1294 (10th Cir. 2009).................................................. 33, 34

*Federal Ins. Co. v. Gates Learjet Corp.*,
  823 F.2d 383 (10th Cir. 1987)...................................................... 20

*Fye v. Okla. Corp. Comm'n,*
   516 F.3d 1217 (10th Cir. 2008)........................................................................ 21

*Grossman v. Novell, Inc.,*
   120 F.3d 112 (10th Cir. 1997).......................................................................... 20

*Hawkins v. Evans,*
   64 F.3d 543 (10th Cir. 1995)............................................................................ 19

*Henderson v. Chrysler Grp. LLC,*
   610 Fed. Appx. 488 (6th Cir. 2015) ................................................................ 38

*Hertz v. Luzenac Group,*
   576 F.3d 1103 (10th Cir. 2009)........................................................................ 20

*Jones v. Univ. of Central Oklahoma,*
   910 P.2d 987, 1995 OK 138 ................................................................. 15,16, 31

*Lyons v. New Mexico Dept. of Corrections,*
   2001 WL 433396, 12 Fed. Appx. 772 (10th Cir. 2001)............................. 19, 26

*Maestas v. Segura*,
   416 F.3d 1182 (10th Cir. 2005)................................................................... 34, 35

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S.Ct. 1348, 989 L.Ed.2d 538 (1986) .................................. 21

*McBride v. Citgo Petroleum Corp.,*
   281 F.3d 1099 (10th Cir. 2002)........................................................................ 38

*McCook v. Springer School Dist.,*
   2002 WL 1788529, 44 Fed Appx 896................................................................ 41

*Mindeman v. Ind. Sch. Dist. No. 6 of Caddo County,*
   189 OK , 771 P.2d 996............................................................................... 15, 24

*Modica v. Taylor,*
   465 F.3d 174 (5th Cir. 2006)............................................................................ 41

*Morgan v. Hilti, Inc.,*
   108 F.3d 1319 (10th Cir. 1997)........................................................................ 38

*Pearson v. Callahan*,
   555 U.S. 223, 129 S.Ct. 808............................................................................ 41

*Perry v. Sindermann*,
   408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) .................................. 4, 15

*Price v. Wolford*,
   608 F.3d 698 (10th Cir. 2010).......................................................................... 19

*Proctor v. UPS,*
   502 F.3d 1200 (10th Cir. 2007)........................................................................ 35

*Raines v. Ind. Schl. Dist. No. 6 of Craig County*,
   796 P.2d 303, 1990 OK 68 ............................................................................... 25

*Richmond v. Oneok, Inc.,*
   120 F.3d 205 (10th Cir. 1997)......................................................... 35
*Robbins v. Oklahoma,*
   519 F.3d 1242 (10th Cir. 2008)....................................................... 19
*Saucier v. Katz,*
   533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ................................... 41
*Siegert v. Gilley,*
   500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)…………………….. 41
*Sutton v. Utah State Sch. for the Deaf & Blind*,
   173 F.3d 1226 (10th Cir. 1999)……………………………………………18

*Swanson v. Bixler*,
   750 F.2d 810 (10th Cir. 1984)......................................................... 18
*U.S. v. Rodrigues-Aguiree,*
   414 F.3d 1177 (10th Cir. 2005)....................................................... 20
*United States v. Johnston,*
   146 F.3d 785 ........................................................................ 20
*Yousuf v. Cohlmia,*
   741 F.3d 31 (10th Cir. 2014)......................................................... 20

## Statutes

42 U.S.C. §1983 ...........................................................................2
Article 2, Section 7 of the Oklahoma Constitution ............................................ 29
29 U.S.C. §2615(a) ...................................................................... 37

## Rules

Fed.R.Civ.P. 15(a) ...................................................................... 20
Federal Rules of Evidence 201(b)........................................................ 28
Rule 12(b)(6) of the Federal Rules of Civil Procedure ....................................... 22

## APPELLEES' RESPONSE BRIEF

Appellees, Amie Colclazier ("Colclazier"), Jack Cadenhead ("Cadenhead"), Mickey Upton ("Upton") (collectively "Individual Defendants") and Independent School District No. I-01 of Seminole County, State of Oklahoma, a/k/a Seminole School District ("District") (collectively "Defendants"), submit the following as their brief in response to the Opening Brief of Appellants Kena Utter ("Utter"), Aubree Holsapple ("Holsapple") and Dara Campbell ("Campbell") (collectively "Plaintiffs").

## <u>Statement of the Issues</u>

1.      The trial court did not err in concluding that Plaintiffs' Amended Petition failed to state a breach of contract claim, particularly as it related to claims that Individual Defendants violated the Collective Bargaining Agreement ("CBA") by evaluating Plaintiffs or by interfering in administrative matters.

2.      The trial court did not err in denying Plaintiffs' Motion to Reconsider and Motion to Amend the Petition because the proposed amendment would have been futile since a custom and practice cannot supersede the Board's non-delegable authority and no implied contract may exist when an express contract exists.

3.      The trial court appropriately found that no disputed material facts existed as to Campbell's First Amendment claim because Defendants were not motivated by her speech.

4.    The trial court appropriately found that no disputed material facts existed as to Utter's Family Medical Leave Act ("FMLA") claim for retaliatory discharge because no causal connection existed.

5.    The trial court correctly ruled that Individual Defendants were entitled to qualified immunity as a matter of law.

<u>**Statement of the Case and Statement of Facts**</u>

**Procedural History:** Plaintiffs filed this action against Defendants seeking damages for the following causes of action: against District for alleged breach of contract under the CBA and violation of the Teachers Due Process Act ("TDPA"); against all Defendants for violation of Plaintiffs' due process rights under the Oklahoma Constitution and the Fourteenth Amendment and violation of the Oklahoma Open Meeting Act ("OMA"); and against Individual Defendants for intentional interference with a business relationship. Additionally, Campbell claimed Defendants violated her First Amendment right to free speech under 42 U.S.C. §1983 ("Section 1983"), and Utter claimed Defendants retaliated against her in violation of the FMLA. App. 7[1], Doc. No. 3-3, Amended Petition. On May 13, 2016, District removed the case to the United Stated District Court for Eastern District Court of Oklahoma ("Court"). App. 1, Removal Notice Docket.

---

[1] Unless otherwise noted, all references to "App." are to the pages of Appellants' Appendix.

Plaintiffs' Amended Petition specifically claimed that District's breach of contract was due to violating the CBA by "terminating and/or nonrenewing and/or not rehiring Plaintiffs, the Board Members failed to abide by statutory and constitutional due process requirements, regulatory restrictions on direct board involvement in school administrative matters, statutory evaluation requirements and restrictions, ...." Plaintiffs further claimed that District violated the CBA by nonrenewing and/or terminating Plaintiffs without due process and for alleged "poor performance." App. 21-22, Doc. No. 3, Amended Petition, ¶ 61.

On May 19, 2016, Defendants filed a Partial Motion to Dismiss on Plaintiffs' claims for breach of contract, violation of the TDPA, and violation of due process under the Fourteenth Amendment regarding both a property and a liberty interest. App. 29, Doc. No. 5, Def. Part. Motion to Dismiss. Defendants argued that Plaintiffs' breach of contract claim should be dismissed because Plaintiffs were not entitled to any due process regarding nonrenewal or termination since Plaintiffs were employed on temporary contracts and the Board's agenda clearly showed that the action was to "hire" Plaintiffs.  App. 32-33, Doc. No. 5, Partial Motion to Dismiss; App. 52, Doc. No. 5-1, July 11, 2015 Minutes of Board Meeting.

On July 15, 2016, Plaintiffs responded to Defendants' Partial Motion to Dismiss. Plaintiffs specifically asserted that they had alleged multiple violations of

the CBA in addition to the TDPA and expressly stated the regulation regarding interference with the administrative functions of the school and the provisions regarding evaluations. Plaintiffs also asserted a substantive due process violation relying on *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and asserting that they had an expectation of renewal based on the principal and superintendent's recommendations for rehire.  App. 64-73, Doc. No. 17, Plaintiffs' Response to Defendants' Partial Motion to Dismiss.

On July 29, 2016, Defendants filed a reply to Plaintiffs' response and noted that Plaintiffs admitted they were employed on temporary contracts and that their contracts had expired prior to the June 11, 2015 meeting. As noted in Footnotes 1 and 2, Plaintiffs' rights under their contract, including the CBA, only existed during the term of their employment for the 2014-2015 school year and such rights expired on the last day of the 2014-2015 school year. Thus, the agenda item was to "hire" Plaintiffs because they were no longer employed by District as of June 11, 2015. Moreover, Plaintiffs' temporary contracts, state law, and the CBA all stated that there was no expectation of continued employment so as to negate any custom and practice claim. App. 74-80, Doc. No. 18, Defendants' Reply to Plaintiffs' Response to Defendants' Partial Motion to Dismiss.

On October 27, 2016, the Court granted Defendants' Partial Motion to Dismiss in its entirety. Appdx 81, Doc. No. 23, Order. The court dismissed Plaintiffs' claims for breach of contract, deprivation of due process under TDPA, Oklahoma Constitution, CBA, and Fourteenth Amendment and deprivation of property and liberty under the Fourteenth Amendment. The Court specifically noted that Plaintiffs' temporary contracts were completed and that Defendants "chose not to offer them new contracts, temporary or otherwise." App.81, Doc. No. 23, Order, p.4, ftnt. 2.

On November 14, 2016, Plaintiffs filed a Motion for Reconsideration and Clarification of the Court's Order of Dismissal. Plaintiffs asserted that the Court's order did not address a number of their breach of contract claims which were independent of the TDPA. Plaintiffs specifically claimed that Defendants breached the CBA by acting as evaluators and by failing to abide by regulatory restrictions on involvement in school administrative matters. Plaintiffs argued that neither of these issues were dependent on the TDPA. App. 92, Doc. No.25, Motion to Clarify.

That same day, Defendants filed a Motion for Summary Judgment on Campbell's First Amendment claim for deprivation of free speech, Utter's claim for retaliatory discharge under FMLA, intentional interference with a prospective business, and violation of the OMA. Individual Defendants also asserted qualified

immunity as to Campbell and Utter's claims. App. 92, Doc. No. 26, Motion for Summary Judgment.

On December 5, 2016, Plaintiffs filed a Request to Amend Petition to Conform to Evidence Gathered Through Discovery. App. 479, Doc. No. 40, Request to Amend. Plaintiffs once again asserted that the Court's order regarding partial dismissal "did not address a number of Plaintiffs' contract claims premised on application of the negotiated agreement that were unrelated to" the TDPA. App. 481. Plaintiffs acknowledged that the overall nature of the claims in the proposed Second Amended Petition was the same as the claims in the Amended Petition. Plaintiffs claimed that the unwritten custom and practice created a reasonable expectation of rehire such as to create a property interest. App. 482-483.

On December 13, 2016, the Court denied both Plaintiffs' Motion to Clarify and Request for Leave to Amend Petition. App. 599, Doc. No. 44, Order. The Court found that Plaintiffs' attempt to revive their contract claims by breaking them down into multiple claims based on the alleged breach was futile. The Court noted that Plaintiffs' contracts had expired and that the Board simply voted not to rehire them. App. 599. The Court's Order held that Plaintiffs had no expectation of continuing contract status. App. 600. As to the request to amend, the Court ruled Plaintiffs' proposed Second Amended Petition listed new facts but the new facts did not create

new causes of action, but were "simply details supportive or not of claims already made." App. 600.

On December 14, 2016, the Court granted Defendants' Motion for Summary Judgment in part. The court granted summary judgment as to: 1) Campbell's First Amendment claim because Campbell failed to show that her speech played a substantial part in District's decision or Individual Defendants' decision not to rehire her; 2) Utter's retaliatory discharge under FMLA because Utter failed to show retaliatory motive by District or by Individual Defendants and Defendants showed legitimate nondiscriminatory reasons for their decision not to re-hire her. The Court also granted qualified immunity to Individual Defendants as to Campbell's First Amendment claim and Utter's FMLA claim. The court remanded the state law claims for alleged violation of the OMA and intentional interference with prospective business interest to the District Court of Seminole County, Oklahoma. App.602, Doc. No. 46, Order. Plaintiffs' notice appeal followed. Case No. 17-7002, Doc. No. 50, Notice.

**Facts:** District is a public school district located in Seminole, Oklahoma and is a political subdivision of the State of Oklahoma. App. 7, Doc. No. 3, Amended Petition ¶ 7. Individual Defendants were members of District's Board of Education

("Board") during the 2014-2015 school year. App. 7, Doc. No. 3, Amended Petition
¶ 6.

Plaintiffs were temporary teachers with District during the 2014-2015 school
year. Their contracts expired in May 2015. App. 7, Doc. No. 3, Amended Petition ¶5:
Appdx, 122 Doc No. 26-1, Pritchard Deposition, 34:21-35:2; App. 209, Doc. No. 26-
18, Plaintiffs' Contracts.

Over the course of one year, Individual Defendants received complaints from
students, parents, staff and patrons about Plaintiffs. In regards to Utter, other teachers
complained of having to covering her class, her constantly coming in thirty minutes
late to work every day and leaving her students without instruction, and failing to
have lessons plans prepared for her substitute teachers. They received complaints
about Holsapple's failure to give early notice on a third grade reading test and the
trauma caused to children who did not progress to fourth grade, an insensitive
attitude, inability to work with special needs students, and shopping on-line during
work hours. In September 2014, they began receiving complaints about Campbell
being disorganized, unsupportive of FFA and 4H programs, showing animals, and
negative Facebook postings about being a Seminole Agriculture teacher. App. 161,
Doc., No. 26-5, Colclazier Deposition 18:1-10,19:6-16, 20:4-23,21:1-4,36-37:19,
42:3-46, 51:14-52; App. 166, Doc. No. 26-6, Cadenhead Deposition 19:25-20:13,

22:19-23:1, 31:17-32:12, 33:1-5, 37:21-25, 38:1-13, 39:11-16, 46:15-48:11; and, App.

154, Doc. No. 26-4, Upton Deposition, 13:10-14:1, 10-15:4, 16:3-15, 23:11-24:12; App.

208, Doc. No. 26-17, Cadenhead Affidavit ¶¶2-6.

Principal Cheatwood ("Cheatwood") agreed that Utter could come to school

late on the mornings that her autistic son had morning melt-downs. Superintendent

Pritchard ("Pritchard") allowed site principals to deal with their staff. Pritchard was

unaware of Cheatwood and Utter's agreement until June 2015. App. 161, Doc. No.

26-5, Cheatwood Deposition 12:21-14:20; App. 166, Doc. No. 26-6, Utter Deposition

12:10-19, App. 122, Doc. No. 26-1, Pritchard Deposition 26:5-19. Utter's son's

morning melt-downs averaged between 20-30 minutes to a maximum of one hour.

She never took a full day off from work to deal with her son's melt downs. App. 166,

Doc. No. 26-6, Utter Deposition 21:5-23, 23:9-14. Individual Defendants were

unaware of Utter's FMLA claim. App. 126, Doc. No. 26-2, Colclazier Deposition

35:11-15; App. 138, Doc. No. 26-3, Cadenhead Deposition 63:18-21; App. 154, Doc.

No. 26-4, Upton Deposition 16:11-15.

Utter was absent 20.6 days (17 full days and 5 half days for sick leave and 2

full days for personal leave) during the 2013-2014 school year and 24.75 days (21 full

days and 6 half days for sick leave and 1 full day for personal leave) during the 2014-

2015 school year that were unrelated to her FLMA leave. App. 173, Doc. No. 26-7,

Utter's Attendance Record. Under the Collective Bargaining Agreement ("CBA"),
there are 175 instructional days. App. 175, Doc. No. 26-8, Seminole CBA.

On December 17, 2014 at a Special Meeting, the Board called for a bond issue
to build a new high school in a different location than the current high school site.
On March 3, 2015, the bond issue failed to pass. App. 177, Doc. No. 26-9, Special
Meeting Minutes dated 12-17-14. Campbell posted a "Vote Yes" sign on the school
bond issue in her yard and made similar postings on Facebook. App. 182, Doc. No.
26-11, Campbell Deposition 38:11-18. Campbell admitted that there were several
other teachers actively involved in the "Vote Yes" campaign for the school bond
issue. These teachers, including Caleb Gordon, attended District's Board meetings,
expressed their opinions about the bond issue at Board meetings, and stood on the
street corner with signs. App. 358, Doc. No. 34-6, Campbell Deposition,41:13-44:18.
Defendants re-hired all the other teachers actively involved in the "Vote Yes"
campaign. App. 358, Doc. No. 34-6, Campbell Deposition,41:9-44:18.

Plaintiffs received teacher evaluations from their site principals for the 2014-
2015 school year. App. 189, Doc. No. 26-12, Osborn Deposition,6:1-8,14:21-15:5;
App. 161, Doc. No. 26-5, Cheatwood Deposition,7:25-8:9. Principal Osborn
("Osborn") testified that Campbell's evaluation only covered her classroom
instruction and not the other aspects of the Agriculture program such as showing

animals. Osborn agreed that Campbell's weakness was showing animals. App. 462, Doc. No. 34-8, Osborn Deposition, 14:18-15:5.

Plaintiffs received their full salaries from District for the 2014-2015 school year. App. 179, Doc. No. 26-10, District's Payroll Records for Plaintiffs.

According to District's policy 1.6.6, District's Board is responsible "to apprise the general effectiveness of the schools." App. 193, Doc. No. 26-13, District's Policy. Under the 2014-2015 CBA with Seminole Teachers Association, teacher evaluations are a "mutual endeavor among all teachers, the administrative staff and the Board of Education to improve the quality of the educational program." App. 175, Doc. No. 26-8, Seminole CBA.

Colclazier, Cadenhead, and Upton, individually communicated with Superintendent Pritchard ("Pritchard") regarding their concerns about rehiring Plaintiffs for the 2015-2016 school year. Upton also expressed his concern about rehiring Gordon, one of District's high school math teachers, for the 2015-2016 school year. Over the course of one year, Individual Defendants separately brought forth various concerns about Plaintiffs to Pritchard. In the summer of 2014, Colclazier spoke with Pritchard about Holsapple's third grade reading test incident. After the Spring 2015 FFA fundraiser, Colclazier spoke with Pritchard regarding several parent and student complaints that she had received about Campbell being

unsupportive with students showing animals. In September 2014, Cadenhead learned about complaints regarding Campbell and shared such complaints with Pritchard on multiple occasions. Also at the beginning of the 2014-2015 school year, Cadenhead received complaints about Utter and Holsapple that had initially started in the previous year. Cadenhead spoke with Pritchard a couple of times about the complaints on Utter and Holsapple towards the end of the 2014-2015 school year. Over the 2014-2015 school year, Colclazier and Cadenhead shared the complaints that they had received about Plaintiffs. Prior to June 11, 2015, Cadenhead and Upton had a couple of conversations about their concerns regarding Plaintiffs. On Friday, June 5, 2015, Cadenhead stopped by Pritchard's office expressing his concerns about re-hiring Plaintiffs and asked Pritchard to investigate his concerns. That same day, Colclazier called Pritchard expressing her concerns about re-hiring Plaintiffs. She also asked him to investigate the complaints that she had received. Sometime prior to June11, 2015, Upton called Pritchard after work to discuss his concerns about re-hiring Plaintiffs and Caleb Gordon because of complaints that he had received about all four teachers. Pritchard did not report back to any Individual Defendants with his findings about Plaintiffs. Colclazier called Pritchard again on June 8, 2016 to see if he had investigated her concerns about Plaintiffs. Pritchard failed to provide Colclazier with any information. App. 126, Doc. No. 26-2, Colclazier Deposition,

18:1-10,19: 6-16,20: 4-23,21:1-4, 26:2-21,36:1-37:19,42:3- 44:25, 46:1-25,51:14-52:25; App. 138, Doc. No. 26-3, Cadenhead Deposition 19:l.-20:13, 22:19-23:1, 31:17-32:12, 33:1-5, 37:21-38:13, 39:11-16,46:15-48:11; App. 154, Doc. No. 26-4, Upton Deposition 13:10-14:1,10-25, 15:1-4,16: 3-15,23:11-24:12; and, App. 208, Doc. No. 26-17, Cadenhead Affidavit, ¶¶ 2-6).

Cadenhead received complaints about Utter not only from his client Lacy Davis ("Davis"), Utter's co-worker, but also from multiple other sources, including other teachers. He never represented Davis in any lawsuit against Utter, Plaintiffs, or District. He never represented District, Colclazier or Upton in any lawsuits. App.138, Doc. No. 26-3, Cadenhead Deposition, 32:3-12, 34:3-36:12, 48:14-24.

Pritchard admitted that prior to the June 11, 2015 Board meeting, Individual Defendants did not follow his recommendation to hire a certain individual as a principal. App. 226, Doc. No. 34-1, Pritchard Deposition, 33:11-34:1.

On the agenda for the June 11, 2015 Board meeting was the hiring of teachers for the 2015-2016 school year. App. 194, Doc. No. 26-14, 6-11-15 District Agenda. According to the minutes of the meeting in Item 34, two separate motions were made as to the hiring of teachers for the 2015-2016 school year. In the first motion, Cadenhead moved to re-hire teachers for the 2015-2016 school year. His motion included Gordon but excluded Plaintiffs and passed unanimously. In the second

motion, Claudia Willis moved to re-hire Plaintiffs for the 2015-2016 school year. The motion failed in a 3-2 vote (Colclazier, Cadenhead and Upton, voted "no" on the second motion). App. 197, Doc. No. 26-15, District Meeting Minutes of 6-11-15.

Soon after the June 11, 2015 Board meeting, all Plaintiffs had multiple job offers and were hired by other educational institutions. App. 166, Doc. No. 26-6, Utter Deposition 45:7-46:25; App. 201, Doc. No. 26-16, Holsapple Deposition 24:15-25:25,27:12-25; and App. 182, Doc. No. 26-11, Campbell Deposition 47:4-48:19.

## Summary of the Argument

In ruling on Defendants' Partial Motion to Dismiss, the Court properly dismissed Plaintiffs' breach of contract and due process claims under state and federal law. Plaintiffs were temporary teachers whose contracts expired at the end of the 2014-2015 school year prior to the June 11, 2015 Board meeting when a majority of the Board voted not to re-hire Plaintiffs. The Court appropriately concluded that there could be no breach of the CBA. Plaintiffs asserted that the CBA was violated when they were nonrenewed or terminated. However, Plaintiffs admitted that their contracts were temporary, and the Board minutes clearly showed that they were being considered for "hire" not nonrenewal or termination. District could not violate the CBA in nonrenewing or terminating Plaintiffs' contracts because, the facts as pled, showed there was no nonrenewal or termination.

Additionally, Oklahoma law is clear that only a school board can hire and fire its teachers. 70 O.S. §5-117(14). A school board cannot negotiate away, either intentionally or unintentionally, a managerial prerogative, such hiring and firing teachers. *Mindeman v. Ind. Sch. Dist. No. 6 of Caddo County,* 189 OK 49, 771 P.2d 996. In this case, District's principals evaluated Plaintiffs in accordance with state law and the CBA. The TDPA states that due process does not apply to teachers on temporary contracts whose contracts are simply allowed to end. 70 O.S. §6-201.23; *DeHart v. Ind. Schl. Dist. No. 1 of Tulsa County,* 259 P.3d 877, 883, 2011 OK CIV APP 68. Under Section 1983, a property interest is created by state law or contract. In this case, neither state law, CBA or Plaintiffs' individual contracts created a property interest.

Moreover, the Court specifically addressed the issue of custom and practice and concluded that teachers on a temporary contract cannot have any expectation of continuing employment. The alleged custom or practice in this case cannot create a property interest in continuing employment. Unlike *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, L.Ed.2d 570 (1972), where the court ruled that custom and practice might show a legitimate claim of entitlement to continuing employment, Oklahoma law is clear that an implied contract may not exist when an express contract exists and has contradictory language. *Jones v. Univ. of Central Oklahoma,*

910 P.2d 987, 990 1995 OK 138. Plaintiffs' temporary contracts, the CBA, and state law expressly state the terms of the contract between Plaintiffs and District and expressly state that there is no expectation of continued employment.

The Court properly denied Plaintiffs' Motion to Clarify and Motion for Leave to Amend. As Plaintiffs' Motion for Leave to Amend stated, there were no new claims which Plaintiffs sought to add, merely a re-ordering or re-stating of the same claims which had been alleged in the Amended Petition and previously dismissed.

The Court properly granted Defendants' Motion for Summary Judgment on Campbell's First Amendment free speech claim. Although Campbell's speech on District's bond election was protected speech, her speech was not the motivating factor for Defendants not rehiring her. The time between Campbell's speech on the bond election "Vote Yes" campaign and District's vote not to re-hire her exceeded three (3) months. Thus, no temporal proximity was established. Campbell admitted that there were several other teachers, including Caleb Gordon, involved in the "Vote Yes" campaign and District rehired all the other teachers. Over a one year period, Colclazier, Cadenhead and Upton received complaints from students, parents, and patrons about Campbell's lack of support of certain aspects of District's Agriculture program, lack of support of showing animals and negative Facebook postings about

her job. Regardless of Campbell's speech, Defendants would have taken the same action of not re-hiring Campbell.

The Court did not err in granting summary judgment to Defendants on Utter's FMLA claim because the undisputed facts showed no causal connection between Utter's FMLA leave and District's not re-hiring her. In a retaliatory FMLA claim, plaintiff must show "bad intent" by Defendants. *Campbell v. Gambro Healthcare, Inc.,* 478 F.3d 1282, 1287 (10th Cir. 2007). Colclazier, Cadenhead, and Upton had no knowledge of Utter's FMLA claim, thus their actions were not motivated by Utter's FMLA leave. The basis of Defendants' vote not to re-hire Utter for 2015-2016, concerned complaints they had received about Utter - - high absenteeism, other teacher's covering Utter's class, and Utter's failure to leave lesson's plans for her substitutes. In other words, Defendants actions would have occurred regardless of Utter's FMLA claim.

Finally, Individual Defendants, as public officials being sued in their individual capacity, were entitled to qualified immunity. Plaintiffs were unable to show that Individual Defendants violated any constitutional or statutory right or that their actions were clearly established as being unlawful at the time alleged.

## Argument

**Standard of Review:**

An appellate court reviews *de novo* the dismissal of a complaint for failure to state a claim under Rule 12(b)(6). *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). A court decides a motion to dismiss for failure to state a claim giving consideration to the allegations of the complaint and viewing the allegations in the light most favorable to the plaintiff. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

A complaint need not contain detailed factual allegations; however, a plaintiff's obligation requires more than labels and conclusions, and a mere recitation of the elements of a cause of action will not be sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570.

One of the purposes of the plausibility requirement is "to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of

success" and "to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10ᵗʰ Cir. 2008). The Supreme Court is critical of complaints that do not include "specific times, places[,] or people involved." *Twombly*, 550 U.S. at 565, n.10. The "degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" which ultimately depends on the type of case. *Robbins*, 519 F.3d at 1248.

The Federal Rules of Civil Procedure do not recognize a motion to reconsider and construe such a motion in one of two ways. See *Hawkins v. Evans,* 64 F.3d 543, 546 (10ᵗʰ Cir. 1995). It is treated as either a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment. *Lyons v. New Mexico Dept. of Corrections,* 2001 WL 433396, 12 Fed. Appx. 772, 773 (10ᵗʰ Cir. 2001). "An appeal from the denial of a Rule 60(b) motion does not itself preserve for appellate review on the merits of the underlying judgment and raises for review only the district court's denial of the motion to reconsider." *Id.;* See also, *Hawkins,*64 F.3d at 546.

The standard of review for either a Rule 59(e) or 60(b) motion is whether the trial court abused its discretion. *Id.; Price v. Wolford*, 608 F.3d 698, 705 (10ᵗʰ Cir. 2010). *"*The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Jennings v. Rivers*, 394

F.3d 850,854 (10th Cir. 2005) quoting *United States v. Johnston,* 146 F.3d 785,792

(10th Cir. 1998).

The applicable standard of review as to Plaintiffs' Request for Leave to Amend

is "abuse of discretion." *U.S. v. Rodrigues-Aguiree,* 414 F.3d 1177 (10th Cir. 2005).

"As a general rule, leave to amend a complaint under Fed.R.Civ.P. 15(a) 'shall be

freely give when justice so requires' and the district court must give a reason for

refusal." *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987).

"[W]hen denial is based on a determination that amendment would be futile, our

review for abuse of discretion includes de novo review of the legal basis for the

finding of futility." *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565

F.3d 1232, 1249 (10th Cir. 2009); cf. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126

(10th Cir. 1997) (noting that if the   stated reasons for dismissing on futility grounds

"are incorrect as a matter of law, the   district court will be found to have abused its

discretion in dismissing the claim with   prejudice"). *Hertz v. Luzenac Group,* 576

F.3d 1103, 1115 (10th Cir. 2009).

An appellate court reviews *de novo* the summary judgment granted by a trial

court, "drawing all reasonable inferences and resolving all factual disputes in favor

of the non-moving party." *Yousuf v. Cohlmia,* 741 F.3d 31, 37 (10th Cir. 2014).

"Although our review of the record is de novo, we conduct that review from the

perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties." *Fye v. Okla. Corp. Comm'n,* 516 F.3d 1217, 1223 (10th Cir. 2008).

A moving party is entitled to summary judgment as a matter of law when the non-moving party fails to establish an essential element of the case with respect to which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). In order to defeat a motion for summary judgment which is properly supported by the evidence, the non-moving party must show that there is a genuine issue of material fact and not merely the existence of some alleged factual dispute between the parties. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). The materiality determination rests on the substantive law's identification of which facts are critical and which facts are irrelevant. *Id.* at 248, 106 S.Ct. at 2510. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 989 L.Ed.2d 538 (1986).

Likewise, an appellate court applies a *de novo* standard of review of a trial court's finding that qualified immunity exists for individual defendants. *Cox v. Glanz,* 800 F.3d 1231, 1242 (10th Cir. 2015).

**I: The Court Did Not Err in Granting Defendants' Partial Motion to Dismiss, Denying Plaintiffs' Motion to Clarify, or Denying Plaintiffs' Motion to Amend as to Plaintiffs' Breach of Contract Claims.**

Plaintiffs contend that the Court erred in granting Defendants' Partial Motion to Dismiss Plaintiffs' Amended Petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, in failing to reconsider its ruling granting the Partial Motion to Dismiss, and in failing to grant leave to amend to add a claim that custom and practice created a property interest.

Plaintiffs asserted a breach of contract claim against District based on alleged violations of the CBA. Plaintiffs' Amended Petition specifically claimed that District's breach of contract was due to violating the CBA by "terminating and/or nonrenewing and/or not rehiring Plaintiffs, the Board Members failed to abide by statutory and constitutional due process requirements, regulatory restrictions on direct board involvement in school administrative matters, statutory evaluation requirements and restrictions, ..." Plaintiffs further claimed that District violated the CBA by nonrenewing and/or terminating Plaintiffs without due process and for alleged "poor performance." App. 21-22, Doc. No. 3, Amended Petition, ¶ 61. Plaintiffs' Amended Petition claimed that the failure to follow administration's recommendation to rehire Plaintiffs for the following school year breached the CBA because it interfered with administration's assigned duties. App. 7, Doc. No. 3, Amended Petition ¶61(a).

Plaintiffs admitted that they were temporary teachers for the 2014-2015 school year. App.7, Doc. No. 3. Amended Petition ¶5. Paragraph 9 of Plaintiffs' Amended Petition alleged that the CBA is annually negotiated between teachers and District. App. 7, Doc. No.3, Amended Petition ¶9. Also, Paragraph 35 of Plaintiffs' Amended Petition alleged that "contracts were due to be renewed at a public school board meeting on June 11, 2015." App. 7, Doc. No. 3, Amended Petition ¶35.

According to Plaintiffs' Amended Petition, their temporary contracts for the 2014-2015 school year expired prior to the June 11, 2015 Board meeting. In other words, at the conclusion of District's 2014-2015 school year, Plaintiffs were no longer employed with District because their contracts had expired. Likewise, the CBA only applied to Plaintiffs during their employment with District. Defendants' decision to not re-hire Plaintiffs occurred on June 11, 2015 after the expiration of Plaintiffs' employment with District for 2014-2015 and after their coverage under the CBA ended. Since Plaintiffs were not employees on June 11, 2015 and the CBA did not apply, no breach occurred.

In Oklahoma, school boards are provided specific enumerated power and duties. A board of education shall have the power to:

> (3)  Maintain and operate a complete public school system of such character as the board of education shall deem best suited to the needs of the school district;
> (14) Contract with and fix the duties and compensation of . . . teachers;

(21) Perform all necessary functions to the administration of a school district . . . but not delegated by law to any other agency or official.

70 O.S. §5-117.

Based on these specific powers, there are the limitations imposed by Oklahoma law on a collective bargaining agreement involving a school district. The statutory duty of a board of education to collectively bargain is not unlimited but must be construed with other provisions of the law giving effect to all. Public sector collective bargaining is limited by public policy. Such public policy limitation is necessary so as to not distort the normal political process for controlling public policy. *Mindemann v. Ind. Sch. Dist. No. 6 of Caddo County,* 1989 OK 49, 771 P.2d 996, 999-1000.

Specifically, school districts may not enter into a collective bargaining agreement which supersedes a school board's mandated statutory duties or which bargains away the discretion of the school board. *Id.* at 1000. A school board may not negotiate a term in a collective bargaining agreement which would restrict its nondelegable statutory authority or duties. *Id.* at 1000. A school board's managerial prerogative cannot be bargained away. Any other interpretation has been held to significantly interfere with a school board's managerial responsibility. *Id.* at 1002. Managerial decisions include decisions regarding employment. A school board may not delegate a statutory duty or surrender the discretion which is vested in the board

of education by statute. *Raines v. Ind. Schl. Dist. No. 6 of Craig County*, 796 P.2d 303, 304, 1990 OK 68.

Plaintiffs never alleged that they did not receive evaluations from their site principals, only that three of District's Board members voted contrary to recommendations from their site principals and the superintendent. App. 7, Doc. No. 3, Amended Petition. Teacher evaluations and administrative recommendations are tools used by District's Board in employment decisions, but the ultimate call as to whether to rehire a temporary teacher can only, in accordance with state law, be determined by District's Board. The Court properly found that Plaintiffs' Amended Petition failed to state a claim for breach of contract because Defendants' vote to not rehire Plaintiffs did not equate to an evaluation.

Moreover, as to the issue of administrative interference, District could not breach the CBA by interfering with administrative duties because only District's Board can hire and fire its teachers. A regulation such as the one relied on by Plaintiffs does not and lawfully cannot supercede or eliminate the Board's non-delegable statutory duty such as the hiring of teachers.

Plaintiffs filed a Motion to Clarify on November 11, 2016 requesting the Court to reconsider its holding on their breach of contract claim which asserted that Individual Defendants acted as evaluators contrary to the CBA. Relief on a motion

to reconsider "may only be granted in exceptional circumstances." *Lyons,* 12 Fed. Appx. at 773. Such circumstances include an intervening change in the controlling law, new evidence previously unavailable, and the need to correct clear error or prevent manifest injustice. *Id.*

Plaintiffs submitted no evidence of the exceptional circumstances required such as a change in law, new evidence, or clear error. To the extent that Plaintiffs claimed new evidence in the form of the source of some of Cadenhead's information as Davis, who was one of Cadenhead's clients, such allegations of a conflict of evidence are unsupported. The Court correctly denied Plaintiffs' Motion to Clarify because, "Plaintiffs were no longer even on a temporary contract. Their contracts had expired. The Board simply voted to not rehire them." App. 600, Doc. No. 40, Order, p.2, ftnt.1. The Court properly found that Plaintiffs did not meet the standard for a motion to reconsider and thus did not abuse its discretion in affirming the previous dismissal of Plaintiffs' breach of contract claims.

The Court denied Plaintiffs' Request for Leave to Amend in the same order that it denied Plaintiffs' Motion to Clarify. App. 599, Doc. No. 44, Order. The Court noted that Plaintiffs were no longer employed on any contract. App. 600, Doc. No. 44, Order, p.2, ftnt.1. The Court reasoned that Plaintiffs were attempting to revive their contract claims, "by breaking them down into multiple claims based on the alleged

breach" and concluded that such an attempt was futile.  App. 599, Doc. No. 44, Order

p.1. Amendment was futile because Plaintiffs acknowledged that their contracts had

ended and that they were no longer employed in any capacity that would subject them

to the requirements of the CBA. Therefore, the Court did not abuse its discretion in

denying Plaintiffs' Request for Leave to Amend.

## II: The Court Did Not Err in Concluding that Plaintiffs as Temporary Teachers Are Not Entitled to Due Process for Nonrenewal of Their Contracts.

In their Opening Brief, Plaintiffs assert that the Court erred in denying their

request for leave to amend to include an additional due process claim based on

creation of a property interest through custom and practice. Plaintiffs further assert

that the Court erred in dismissing Plaintiffs' claims regarding breach of the negotiated

agreement which guarantees due process for all teachers. Appellants' Opening Brief,

p. 33.

Plaintiffs alleged that District breached its contractual obligations set forth in

the CBA by failing to follow state and federal law regarding non-renewal of their

teaching contracts. Plaintiffs also alleged that District failed to comply with the

TDPA and that District and Individual Board members violated Plaintiffs' due

process rights under the Fourteenth Amendment and the Oklahoma Constitution by

failing to provide the statutory pre-termination process afforded under Oklahoma law,

specifically the TDPA, prior to being terminated or non-renewed. App. 7, Doc. No. 3, Amended Petition. All of these claims made by Plaintiffs are dependent on the provisions of the TDPA and/or a property interest in employment.

Plaintiffs asserted and Defendants did not dispute that they were employed on temporary contracts for the 2014-2015 school year. App. 7, Doc. No. 3, Amended Petition, ¶ 5. Pursuant to Federal Rules of Evidence 201(b), District requested the Court to take judicial notice of the minutes of District's Board meetings held on June 12, 2014 and June 11, 2015. App. 40 and 54, Board minutes of June 11, 2015 and June 12, 2014. The minutes of June 12, 2014 reflected in Item 22 that each Plaintiff was hired on a temporary contract. The minutes of June 11, 2015 reflect in Item 34 that the Board was considering taking action on the Superintendent's recommendation to hire Plaintiffs and that they would be moving from temporary teachers to non-career teachers.

Oklahoma law defines dismissal as "the discontinuance of the teaching service of an administrator or teacher during the term of a written contract..." 70 O.S. §6-101.3(2). Nonreemployment is defined as the "nonrenewal of the contract of an administrator or teacher upon expiration of the contract." 70 O.S. §6-101.3(3).The TDPA sets forth the procedures for school districts to follow to dismiss or non-renew various categories of teachers. 70 O.S. §6-101.25.

Oklahoma law specifically addresses the applicability of the TDPA to temporary teachers and states:

> A. The dismissal, suspension and nonreemployment provisions of the Teacher Due Process Act of 1990 shall not apply to:
> > 1. Substitute teachers;
> > 2. Adult education teachers; and
> > 3. **Teachers who are employed on temporary contracts.**
>
> B. The dismissal and suspension provisions of the Teacher Due Process Act of 1990 shall apply to teachers who are employed on temporary contracts for a complete school year ..., **except that such teachers shall be employed only for the duration of the temporary contract** ... (emphasis added).

70 O.S. §6-101.23. Thus, the law in Oklahoma is clear that a teacher employed on a temporary contract is NOT entitled to the procedures set forth in the TDPA when the temporary contract is nonrenewed or the contract is merely allowed to expire at the end of the temporary contract.

Defendants did not violate the TDPA or breach the collective bargaining agreement setting forth the rights under the TDPA because the TDPA was not applicable to the situation presented by Plaintiffs. Rather, as evidenced by the minutes of the June 11, 2015 meeting, Defendants did not hire Plaintiffs.

Plaintiffs alleged deprivation of due process of their property interest under the Fourteenth Amendment and Article 2, Section 7 of the Oklahoma Constitution. App. 7, Doc. No.3, Amended Petition ¶¶ 24, 70-71. "Determination of whether a plaintiff

has a property interest is a question of state law." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 207, 48 L.Ed.2d 684 (1976). A property interest is not created by either the Federal or Oklahoma Constitutions but is created by and defined by state law or contract. *Id.* "To have a property interest, a person must have more than a unilateral expectation, but, must instead, have a legitimate claim of entitlement to the interest." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972).

Since Oklahoma law does not provide for procedures to non-renew a temporary teacher's contract at the end of the temporary contract but specifically provides that the teacher shall only be employed for the duration of the temporary contract, a temporary teacher has no property interest in continued employment. When a temporary teacher's contract is merely allowed to end and the contract is not renewed, there is no violation of due process. *DeHart v. Ind. Schl. Dist. No. 1 of Tulsa County*, 259 P.3d 877, 883, 2011 OK CIV APP 68.

As temporary teachers, Plaintiffs had no right of continued employment with District and no legitimate claim of entitlement to a property interest. Their 2015-2016 contracts expired before the June 11, 2015 Board meeting. Therefore, Plaintiffs had no property interest which would entitle them to due process under the Fourteenth Amendment or the Oklahoma Constitution.

Since Plaintiffs were teachers employed on temporary contracts, they were not entitled to any due process relative to the non-renewal of their contracts of employment either under the CBA, the TDPA, or the Fourteenth Amendment or the Oklahoma Constitution's due process provisions. Thus, for the reasons stated above, the Court properly dismissed Plaintiffs' Amended Petition.

As to Plaintiffs' alleged property interest purported to be created by custom and practice, the Court denied Plaintiff's Motion to Amend stating that:

> It is not plausible that the School District negated its entire written policy and process for hiring with an unwritten practice. Moreover, the evidence listed in Plaintiffs' motion to amend shows simply that temporary teachers are generally rehired with those recommendations. It does not show that the written hiring policy was replaced with an unwritten policy that any temporary teacher who receives those recommendations is immediately transformed into a permanent contractual employee. . . The facts listed do not create new causes of action, but are simply details supportive or not of claims already made.

App. 599, Doc. No.44, Order. The Court's decision is consistent with Oklahoma law which has held that an implied contract cannot exist when there is an express contract. *Jones v. Univ. of Central Oklahoma*, 910 P.2d 987, 990, 1995 OK 138.

As set forth above, state law requires certain managerial duties, such as hiring, to be performed by the board of education. 70 O.S. §5-117. Such duties are non-delegable and may not be superseded by the recommendations of principals and superintendents. *Raines, supra; Mindeman, supra.*

Plaintiffs argue that District's custom and practice of following administrative recommendations for hiring teachers created a property interest and thus an expectation of continued employment which required due process. However, Oklahoma law unequivocally provides that only a school board can hire and fire its teachers. 70 O.S. §5-117(14). Any custom or practice which required District to hire employees based solely on an administrative recommendation would infringe upon the Board's non-delegable duty to hire employees. The authority to hire is a nondelegable duty that may not be eliminated or usurped based on an unwritten custom and practice.

Additionally, Plaintiffs' assertion that custom and practice created an implied contract such as to entitle them to due process is contrary to the law. While the courts have recognized that there may be an implied contract in certain circumstances based on custom and practice, in Oklahoma, an implied contract may not exist where there is an express contract.  No property interest may exist because of custom and policy in this case because Plaintiffs had an express contract and express statutes which set forth their property rights. The contracts provided that they were temporary and ended at the end of the school year while the statute indicated that they had no expectation of continued employment. The Court properly denied Plaintiffs' Request for Leave to Amend as futile and did not abuse its discretion.

**III:    Defendants' Motion for Summary Judgment was Appropriately Granted.**

**A.    Campbell's Speech Was Not The Motivating Factor For Not Re-Hiring Her For the 2015-2016 School Year.**

Campbell alleges that Defendants retaliated against her for exercising her First Amendment right to freedom of speech under Section 1983. Campbell claims that Defendants retaliated against her because of her position on the school bond issue (vote "yes"). App. 7, Doc No. 3, Amended Petition ¶75.

In the Tenth Circuit, the "*Garcetti/Pickering*" test is applied to determine whether a public employee can establish a prima facie case of First Amendment retaliation. *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301 (10th Cir. 2009); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007). The *Garcetti/Pickering* test involves five (5) elements: 1) whether the plaintiff spoke pursuant to his official duties; 2) whether the plaintiff's speech touches upon a matter of public concern; 3) the balance between the employee's interest in commenting upon such matters against the interest of the State, as employer, in promoting the efficiency of the public services it performs through its employees; 4) whether the plaintiff can demonstrate that the protected speech was a substantial or motivating factor in the employer's decision to take an adverse employment action against the plaintiff; and 5) whether the employer can show that the adverse employment action

would have occurred even in the absence of the protected speech. *Dixon*, 553 F.3d at 1301-02; *Brammer-Hoelter*, 492 F.3d at 1202-03. The first three prongs are issues of law to be decided by the court; the fourth and fifth prongs are factual issues to be decided by the fact finder unless there is no question of material fact. *Dixon*, 553 F.3d at 1303.

In order to establish retaliation, the plaintiff must show that her speech was a substantial or motivating factor in the detrimental or adverse employment decision. *Brammer-Hoelter*, 492 F.3d at 1203. A plaintiff has to "produce evidence linking the employer's action to the employee's speech." *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005). Speculation, hunches, rumor, and innuendo are insufficient to establish the necessary causal link. *Id.* at 1189. A plaintiff cannot sustain his burden on this element "simply by showing that the elimination of the protected activity may have been welcomed by the defendants." *Id.*

While adverse action in close temporal proximity to protected speech may warrant an inference of retaliatory motive, temporal proximity is insufficient, without more, to establish that the speech was a substantial or motivating factor. *Id.* "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity

must be 'very close'". *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268,273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Otherwise, the plaintiff must produce additional evidence to establish causation. *Proctor v. UPS,* 502 F.3d 1200, 1208-09 (10th Cir. 2007). In fact, a three (3) month period between an employee exercising his right and employee's termination has been held to be insufficient to show temporal proximity. *Richmond v. Oneok, Inc.,* 120 F.3d 205 (10th Cir. 1997). An employee exercising her rights under the First Amendment does not serve to protect the employee from legitimate employment actions. *Maestas* 416 F.3d at 1190.

In this case, Defendants conceded that voicing an opinion on a school bond issue is a matter of public concern. However, Campbell's public statements on the school bond issue were not the motivating factor for Defendants' decision not to rehire her nor in temporal proximity to Defendants' decision. District's Board called for the bond election on December 17, 2014 with an election date of March 3, 2015. Campbell's speech, "Vote Yes", occurred between the time span of December 17, 2014 and March 3, 2015. Defendant's vote not to re-hire Campbell occurred on June 11, 2015 - - three (3)  months after Campbell's First Amendment activity. Like *Richmond*, there is no temporal proximity to establish Campbell's prima facie case.

Rather, the undisputed material facts established that, starting in September 2014, Individual Defendants began receiving complaints from students, parents, and

patrons about Campbell's lack of support of certain aspects of District's Agriculture program, including lack of support of the high school FFA program and 4-H program, lack of support of showing animals, and negative Facebook postings about her job. On multiple occasions, Cadenhead spoke to Pritchard about the complaints on Campbell. Campbell argued that Cadenhead had conversations with her about the March 2015 bond issue and her stance on the bond issue and that Cadenhead and Colclazier had informed Campbell at various times that she was doing an excellent job. The undisputed facts establish that the bond issue election which Campbell supported took place in March of 2015, that Colclazier received complaints about Campbell's performance in April of 2015, and that Campbell's evaluator believed she had a weakness regarding showing animals. Campbell submitted no evidence that connected the vote not to rehire her to anything having to do with her speech regarding the 2015 Bond Issue; rather, she relied wholly on speculation and innuendo which was insufficient to establish a causal link.

Campbell's position on the District's bond issue **was not** the motivating factor for not re-hiring her for the 2015-2016 school year; rather her failure to support Agriculture programs, her negative attitude, and patron complaints were the motivating factors for Defendants' decision. Regardless of Campbell's position on

the bond issue, Defendants would have taken the same action of not re-hiring Campbell for the 2015-2016 school year.

Additionally, Campbell admitted that there were several other teachers involved in the "Vote Yes" campaign for the school bond issue. Theses teachers attended District's Board meetings, expressed their opinions at the Board meetings and stood on street corners with signs - - including Caleb Gordon. It is undisputed that District rehired all the other teachers involved in the "Vote Yes" campaign.

The undisputed material facts showed that Defendants did not deprive Campbell of her First Amendment rights under Section 1983. Campbell submitted no evidence which would establish a nexus between her protected speech and the action taken not to rehire her months later. Thus, the Court appropriately granted summary judgment in favor of Defendants and against Campbell on her First Amendment claim.

### B.    Defendants' Decision Regarding Utter's Employment was Unrelated to Her FMLA Claim.

The FMLA, "makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the Act". 29 U.S.C. §2615(a); see also, *Bones v. Honeywell Intern., Inc.,* 366 F.3d 869, 877 (10th Cir. 2004). To establish a claim under FMLA, plaintiff must show that "(1) she availed herself of a protected right under the FMLA; (2) she was adversely affected

by an employment decision; and (3) there is a causal connection between the two actions". *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1325 (10th Cir. 1997).  However, if a defendant shows that a plaintiff would have been terminated in the absence of the FMLA request or leave, then no FMLA claim exists. *McBride v. Citgo Petroleum Corp.,* 281 F.3d 1099 (10th Cir. 2002). An employee who utilizes FMLA leave has no greater protection against his employment being terminated for reasons not related to his FMLA leave than he did prior to utilizing FMLA leave. *McBride,* 281 F.3d at 1108.

For a retaliatory FMLA claim under the third prong, the Tenth Circuit requires a showing of bad intent or "retaliatory motive" on the part of the employer. *Campbell v. Gambro Healthcare Inc.,* 478 F.3d 1282, 1287 (10th Cir. 2007). Since the employer's intent in FMLA retaliation claims is highly relevant, an employer cannot have retaliated against an employee for invoking taking FMLA leave unless the decisionmaker knew or should have known that the employee had taken FMLA leave. *Chase v. United State Postal Services,* 843 F.3d 553, 558 (1st Cir. 2016). Corporate or managerial knowledge cannot override a decisionmaker's lack of knowledge in FMLA retaliation cases. *Id.* at 560. See also *Henderson v. Chrysler Grp. LLC,* 610 Fed. Appx. 488, 496 (6th Cir. 2015); *Brugngart v. Bellsouth Telecomms, Inc.* 231 F.3d

791,800 (11th Cir. 2000); *Cohen v. Fred Meyer, Inc,* 686 F.2d 793, 797 n.5 (9th Cir. 1982).

During Utter's employment with District from 2013-2015, Utter was absent 20.6 days in 2013-2014 (17 full days and 5 half days for sick leave and 2 full days for personal) and 24.75 days during 2014-2015 (21 full days and 6 half days for sick leave and 1 full day for personal). Utter admits that she never took a full day because of her son's melt-downs. Thus, the majority of Utter's absences were unrelated to her FMLA leave. There are 175 instructional days for each school year according to the CBA. In the 2013-2014 school year, Utter missed 11% of the instructional teaching time and in the 2014-2015 school year, she missed 14% of the instructional teaching time.

At the beginning of the 2014-2015 school year, Individual Defendants began receiving complaints about Utter's absences, that other teachers had to cover her classes, and that Utter failed to have lesson plans for her substitute teachers. Individual Defendants were unaware of Utter's arrangement with Cheatwood to utilize FMLA leave when Utter's son had a morning melt-down. Individual Defendants asked Superintendent Pritchard to investigate the complaints about Utter; unfortunately, he never reported back to Individual Defendants any information regarding Utter's absences and tardies.

The uncontroverted evidence showed that the basis of Defendants' vote not to re-hire Utter for 2015-2016 concerned the complaints they received about Utter. Since Individual Defendants had no knowledge of Utter's FMLA claim, they had no motive to retaliate against her for her FMLA leave. Utter was not re-hired for the 2015-2016 school year for reasons unrelated to her FMLA leave. Plaintiffs failed to establish a causal connection between her not being re-hired and her use of FMLA leave. The Court appropriately found summary judgment in Defendants favor and against Utter as to her FMLA claim.

## IV: The Court Properly Found That Individual Defendants Were Entitled to Qualified Immunity.

Utter and Campbell filed their claims against Individual Defendants under Section 1983. App. 7, Doc. No. 3, Amended Petition. In ruling on Defendants' Motion for Summary Judgment, the Court found that Individual Defendants were entitled to qualified immunity because Campbell cited to no authority showing she had a clearly established right that would have prevented Cadenhead from voting to hire her after she disagreed with him on the bond issue. Campbell failed to meet her burden of showing a violation of a clearly establish constitutional right. As to Utter's FMLA retaliation claim, the Court concluded that Individual Defendants did not know of Utter's FMLA leave and that Utter did not show a clearly established right under such circumstances.

The defense of qualified immunity protects government officials from liability for civil damages when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." *A.M. v. Holmes,* 830 F.3d 1123, 1134 (10th Cir. 2016). School board members may assert the defense of qualified immunity. *McCook v. Springer School Dist.,* 2002 WL 1788529, 44 Fed Appx 896, (Superintendent and individual board members were entitled to qualified immunity from a Section 1983 claim that father's speech at board meeting caused his son's expulsion and excluded parents from school property); *Modica v. Taylor,* 465 F.3d 174 (5th Cir. 2006) (Individual defendants are entitled to qualified immunity for FMLA claim).

When a defendant raises the defense of qualified immunity, a plaintiff must establish that the defendant's conduct violated a federal constitutional or statutory right and that the right was clearly established at the time of the conduct. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003); *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)(holding that the two step procedure should not be an inflexible requirement).

The uncontroverted facts showed that Plaintiffs failed to establish the violation of any constitutional or statutory right (Campbell's First Amendment and Utter's FMLA claim) by Individual Defendants and that there was no "clearly established" law. Campbell's speech and Utter's FMLA claim were not the motivating factors for Individual Defendants not re-hiring them for the 2015-2016 school year; thus, there was no violation of any right. Since Individual Defendants had no notice of Utter's FMLA leave, the law was not clearly established, as to whether Utter even had a FMLA claim. Individual Defendants never had the opportunity to determine if Utter's claim needed certification by a healthcare provider or if the amount or timing of intermittent leave could potentially impact Utter's students. Accordingly, Individual Defendants were entitled to qualified immunity, and the Court properly granted Individual Defendants qualified immunity.

## <u>Conclusion</u>

In this case, the Court appropriately dismissed portions of the Amended Complaint relating to breach of contract and due process because Plaintiffs failed to state a claim. Plaintiffs failed to state a claim for breach of contract because they were temporary teachers with no further statutory or contractual rights once their contracts of employment expired at the end of the school year.

Additionally, to the extent that Plaintiffs asserted a claim for a property interest based on custom and practice, such a right cannot exist where there is express language stating that there is no expectation of continued employment. The Court did not err in denying Plaintiffs' Motion to Clarify or Motion for Leave to Amend. It would have been futile to allow amendment for a claim based on a property interest created by custom and practice because such a claim may not exist. The alleged custom and practice of following administrative recommendations does not replace Board's non-delegable duty to hire employees. Also, an unwritten custom and practice does not create an implied contract when an express contract exists. In this case, the express written contract, as well as the statutes, clearly provided that Plaintiffs had no expectation of continued employment.

The Court appropriately granted summary judgment as to Campbell's First Amendment free speech claim because Campbell submitted no evidence that her protected speech was the motivating factor for Individual Defendants' decision not to hire her. District, through the vote of Individual Defendants, rehired other teachers who were involved in the "Vote Yes" campaign. The Court correctly granted summary judgment to Defendants on Utter's retaliatory FMLA claim because Individual Defendants had no knowledge of Utter's FMLA leave. Thus, there was no causal connection between her FMLA leave and the decision not to rehire her.

Additionally, the material facts regarding Utter's excessive absenteeism was undisputed such that she would not have been rehired even in the absence of her FMLA leave.

The Court did not err in granting qualified immunity to Individual Defendants on Campbell's First Amendment claim or on Utter's FMLA retaliation claim.

## Certificate of Compliance

I certify that this brief is proportionally spaced in Times New Roman, 14 point type, and contains 10,256 words which is less than the number allowed by the rules of this Court. I relied on my word processor (WordPerfect 7) to obtain the count.

## Certificate of Digital Submission

With respect to Appellee's Response Brief, I certify that:

(1) all required privacy redactions have been made;

(2) the hard copies to be submitted to the court are exact copies of the ECF submission;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Security Manager AV Defender, ver. 5.3.28.761, updated May 25, 2017, and according to the program are free of viruses.

S/Laura L. Holmes
Laura L. Holmes, OBA #14748
Laura L. Holmgren-Ganz, OBA #12342
900 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 528-2800
Facsimile: (405) 528-5800
LHolmes@cfel.com
LGanz@cfel.com

### Certificate of Service

I hereby certify that on May 26, 2017, I electronically filed the foregoing attached

document with the Clerk of the Court using the CM/ECF system for filing which will send

notice of electronic filing to the following: Heath Merchen

S/Laura L. Holmes
Laura L. Holmes